[No. H026704. Sixth Dist. July 27, 2004.]

FRED NYULASSY, Plaintiff and Respondent, v.
LOCKHEED MARTIN CORPORATION, Defendant and Appellant.

1270

## Counsel

Hogan & Hartson, Michele C. Coyle and David R. Singer for Defendant and Appellant.

Law Office of Randall M. Widmann and Randall M. Widmann for Plaintiff and Respondent.

## Opinion

**WALSH, J.—** ██ Our Supreme Court has upheld employment agreements that require the employee to arbitrate disputes, so long as the arbitration clause does not impair the employee's statutory rights and is not unconscionable. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).) We are called upon here to examine whether a mandatory employment arbitration agreement—executed by the employee in connection with the settlement of a previous dispute with the employer's predecessor after advice from the employee's attorney—is unconscionable or otherwise unenforceable.

Plaintiff Fred Nyulassy sued his employer, defendant Lockheed Martin Corporation, alleging that defendant demoted him in retaliation for his protected workplace activity (i.e., complaints about treatment of employees and resistance to employer-sanctioned illegal activity). Plaintiff asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, wrongful demotion in violation of public policy, and violation of section 6310 of the Labor Code. Defendant moved to compel arbitration and stay all proceedings (motion), based upon a mandatory arbitration clause in plaintiff's employment agreement. The trial court denied the motion, and defendant appeals that decision.

Defendant claims that the court erred in holding that the subject arbitration agreement was unconscionable, and that the court improperly extended the holding in *Armendariz* to a postdispute arbitration agreement as defendant claims is presented here. For the reasons stated below, we conclude that the trial court correctly decided that the arbitration agreement was unconscionable. Accordingly, we affirm the order denying the motion to compel arbitration.

## FACTS

### I. *Prior Dispute*

Plaintiff was employed for approximately 20 years by Western Development Labs and/or Loral Aerospace Corporation, company/companies subsequently acquired by defendant (collectively, defendant's predecessor).[1] In December 1994, defendant's predecessor terminated plaintiff.

As a result of his termination, plaintiff brought an action in Santa Clara Superior Court, case No. CV 747363 (prior case), asserting, inter alia, a claim for age discrimination. Plaintiff was represented in that prior case by Randall Widmann, his attorney in the present action. The parties to the prior case settled their dispute in November 1997 and signed the agreements that are central to the issue of the arbitrability of the present dispute. The terms of the settlement included a payment to plaintiff[2] and an agreement that defendant would hire plaintiff as an employee.

### II. *Settlement Agreement*

In or about November 1997, the parties to the prior case—plaintiff and defendant's predecessor—entered into a written agreement (settlement agreement) entitled, "Confidential Settlement Agreement And Release Of Claims." (Capitalization omitted.) The settlement agreement was signed by plaintiff; it was also signed by Attorney Widmann, as plaintiff's counsel, below the block lettering, "APPROVED AS TO FORM."

Paragraph 18 of the settlement agreement provided in part: "The parties stipulate that any action involving the validity, interpretation or enforcement of the Agreement, or for any claim for breach of this Agreement shall be subject to the arbitration provision in Exhibit C." The document referenced as "Exhibit C" was the employment agreement (discussed *post*), entered into by the parties at the time of the settlement. The settlement agreement contained a confidentiality provision, which referenced further the remedy of arbitration under the employment agreement. The settlement agreement also

---

[1] The settlement agreement entered into in the prior case (discussed *post*) contains a recital that plaintiff was originally employed by Philco-Ford, a company which subsequently became Ford Aerospace and Communications Company, which was the predecessor of Loral. The agreement identified Western Development Labs as having previously been a business unit of Loral and later an operating company of defendant. It is undisputed that defendant succeeded to the rights and liabilities of plaintiff's prior employers and that defendant participated in the prior employment suit brought by plaintiff that was settled in 1997.

[2] We acknowledge that the settlement agreement entered into by the parties in the prior case contained a confidentiality clause. Accordingly, we decline to describe the specifics of the monetary payment to plaintiff that was a part of that settlement.

contained a general provision that the parties in the prior case had been represented by counsel; it included a statement that the parties had carefully read and reviewed the terms of the agreement with their respective counsel and were "freely and voluntarily entering into it."

### III. *Employment Agreement*

At or about the time the settlement agreement was signed, plaintiff and defendant signed an employment agreement.[3] That agreement was a standard form document; it was modified or supplemented, however, in several respects by the settlement agreement. One notable change made plaintiff's employment relationship terminable only for good cause for a period of three years after the date of his employment, notwithstanding the "at-will" provision in the form employment agreement. The settlement agreement also contained supplemental terms of plaintiff's employment, including starting salary, the identity of plaintiff's supervisor, and other specifics.

The employment agreement provided that all disputes or controversies that plaintiff had concerning his employment would be subject to binding arbitration conducted under the employment dispute resolution rules of the American Arbitration Association. Under this arbitration agreement, plaintiff waived all rights to pursue any claims against defendant through judicial proceedings. Plaintiff—as a precondition to arbitration—was also required to attempt to resolve any employment disputes by engaging in discussions with various levels of management. The employment agreement provided further that plaintiff waived his arbitration remedy if he did not exercise it (a) within 180 days of his employment termination (if a termination claim), or, alternatively, (b) within 180 days after such other dispute or controversy arose.[4]

---

[3] The settlement agreement acknowledged that plaintiff was also required to execute an employment application (identified as "Exhibit 'B' "), and a proprietary information agreement (identified as "Exhibit 'D' ").

[4] Paragraph 6 of the employment agreement read in pertinent part as follows: "If I object to or disagree with any Lockheed Martin personnel decision relating to or affecting the terms and conditions of my Lockheed Martin employment (INCLUDING, WITHOUT LIMITATION, ANY AND ALL CLAIMS OR ALLEGATIONS OF *(a)* DISCRIMINATION BASED ON SEX, RACE, AGE, NATIONAL ORIGIN, OR ANY OTHER FORM OF DISCRIMINATION, OR *(b)* HARASSMENT BASED ON SEX OR ANY OTHER FORM OF HARASSMENT), I agree I shall seek to resolve my objection or disagreement through discussions within successive levels of my supervisory chain of command, until the objection or disagreement is resolved or I have had the opportunity to discuss the matter with the Vice President, Human Resources, or such other senior management official responsible for human resources matters within the Lockheed Martin business unit to which I am assigned. I UNDERSTAND AND AGREE THAT IF THE DISPUTE OR CONTROVERSY IS NOT RESOLVED TO MY SATISFACTION BY MEANS OF SUCH DISCUSSION(S), MY SOLE AND EXCLUSIVE REMEDY AND AVENUE OF REDRESS IS THROUGH ARBITRATION PROCEEDINGS CONDUCTED IN ACCORDANCE WITH THE EMPLOYMENT DISPUTE RESOLUTION

## IV. *Declarations Submitted in Connection with Motion*

Plaintiff submitted two declarations in opposition to defendant's motion to compel arbitration: Widmann's and plaintiff's own declaration. Plaintiff declared that, as part of settling the prior case, he was required to sign the employment agreement and a proprietary information agreement, and that "[t]here was no negotiation over any of the terms of these agreements, as Lockheed will not negotiate the terms of its proprietary information agreement and employment agreement."[5] He stated further that he had been out of work after being terminated by defendant's predecessor, and that, "if [he] wanted to settle [his] case[, he] would have to do what all-new [*sic*] employees do and that is sign the employment agreement and proprietary information agreements concerning which no negotiations were tolerated by LOCKHEED."

Widmann declared that he had represented plaintiff in both the prior case and in the instant action. He summarized the allegations in the prior case and described it as "hard fought" litigation that lasted nearly three years. During settlement negotiations shortly before trial scheduled in September 1997, defendant "abruptly" made an employment offer to plaintiff. Widmann declared that, under the terms of the settlement reached in the prior case, in order to be hired, plaintiff "was required to submit a resume, complete an employment application, sign a proprietary agreement and the standard employment agreement which LOCKHEED was using at that time. These

---

RULES OF THE AMERICAN ARBITRATION ASSOCIATION. . . . I UNDERSTAND THAT BY AGREEING TO ARBITRATION OF ANY AND ALL SUCH DISPUTES AND CONTROVERSIES, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO OR INVOLVING CLAIMS OR ALLEGATIONS OF *(a)* DISCRIMINATION BASED ON SEX, RACE, AGE, NATIONAL ORIGIN, OR ANY OTHER FORM OF DISCRIMINATION, OR *(b)* HARASSMENT BASED ON SEX OR ANY OTHER FORM OF HARASSMENT, I HEREBY KNOWINGLY, WILLINGLY AND ADVISEDLY *WAIVE* ANY AND ALL RIGHTS TO PURSUE JUDICIAL PROCEEDINGS OR ACTIONS AND REMEDIES WHICH I MIGHT OTHERWISE HAVE BEEN ENTITLED TO PURSUE, OR WHICH MIGHT OTHERWISE HAVE BEEN AVAILABLE TO ME, IN THE ABSENCE OF THE WAIVER ESTABLISHED BY THIS SENTENCE. . . . The arbitration decision shall be final and binding to the full extent permitted by law. . . . I FURTHER UNDERSTAND AND AGREE I WILL *WAIVE* MY SOLE AND EXCLUSIVE ARBITRATION REMEDY UNLESS I FILE A WRITTEN DEMAND THEREFOR WITH THE DIVISION VICE PRESIDENT, HUMAN RESOURCES (OR SUCH OTHER SENIOR MANAGEMENT OFFICIAL RESPONSIBLE FOR HUMAN RESOURCES MATTERS WITHIN THE LOCKHEED MARTIN DIVISION TO WHICH I AM, OR IN THE CASE OF A TERMINATION CLAIM WAS, ASSIGNED), WITHIN 180 DAYS OF THE DATE *(I)* OF MY TERMINATION FROM LOCKHEED MARTIN EMPLOYMENT, OR *(II)* SUCH OTHER DISPUTE OR CONTROVERSY FIRST AROSE."

[5] Plaintiff acknowledged (somewhat contradictorily) in his declaration that the at-will portion of his employment agreement was "[t]he only portion of [his] employment that was negotiable."

documents were not negotiated by the parties and, indeed, were non-negotiable." Widmann twice repeated in his declaration that the terms of the employment agreement were nonnegotiable. He declared that, if plaintiff "wanted to settle his case at all on any terms he had to sign the standard employment agreement . . . . Thus, if Mr. Nyulassy wanted to obtain the other benefits of the settlement aside from obtaining employment from LOCKHEED he had to sign the standard agreements which were non-negotiable."[6] (Under-scoring in original.)

Defendant's evidence in support of the motion consisted of a declaration from its counsel (in the present case),[7] principally reciting the language contained in the settlement documents from the prior case. Exhibits to that declaration included copies of the settlement agreement (redacted), the employment agreement, and correspondence between counsel involving defendant's request that plaintiff arbitrate his dispute pursuant to the arbitration clause in the employment agreement. Defendant submitted no declarations in reply to the Nyulassy and Widmann declarations.

## PROCEDURAL HISTORY

Plaintiff filed his complaint on May 15, 2003. The complaint alleged four causes of action arising out of plaintiff's employment relationship with defendant, namely, (1) wrongful demotion in violation of public policy (claimed under, inter alia, Lab. Code, § 6310), (2) violation of statute (Lab. Code, § 6310), (3) breach of employment contract,[8] and (4) breach of implied good faith covenant.

The complaint alleged that, as of March 2001, plaintiff managed defendant's QA department in Santa Clara County, and at that time, he was given additional responsibility for the management of the QA department in the "RSAIIA project," located in Santa Maria. Plaintiff alleged that he made complaints to management both about his employer's abusive treatment of his subordinates in Santa Maria, and regarding its insistence that defendant deliver a product to the United States government that the company knew

---

[6] At the hearing on the motion—reiterated on appeal—defendant made blanket parol evidence objections to the Nyulassy and Widmann declarations. (See Code Civ. Proc., § 1856, subd. (a).) Defendant does not make clear what specific aspects of the declarations it claims are objectionable. We disagree, however, that the substance of the declarations contradicts the parties' agreement "by evidence of any prior agreement or of a contemporaneous oral agreement." (*Ibid.*) Accordingly, we overrule defendant's evidentiary objection.

[7] There was no declaration by defense counsel in the prior case that was submitted in connection with the motion.

[8] The complaint failed to allege whether the employment contract was written or oral. It is clear, however, from the papers filed in connection with defendant's motion that the parties had a written contract, namely, the employment agreement containing the arbitration provision at issue in this appeal.

was defective. The complaint alleged further that, sometime[9] after receiving extremely favorable reviews in January 2002 and June 2002, plaintiff was "abruptly" given an "[u]nsatisfactory" interim performance review, removed from his management position, and was told that he should retire. He claimed that defendant took this adverse employment action as a result of his protected activities of complaining "about the treatment of . . . employees and his complaining about and resisting [defendant's] efforts to sell defective products to the government."

Defendant filed its motion on August 1, 2003, requesting that the court issue an order compelling arbitration and staying the action until the matter was resolved through binding arbitration. It asserted that the written employment contract and settlement agreement between the parties expressly mandated that the controversy alleged in the complaint be resolved through binding arbitration.

In his opposition to the motion, plaintiff contended, inter alia, that the mandatory employment arbitration agreement was unenforceable because (1) it was unconscionable, and (2) it was against public policy in that it failed to meet the minimum requirements enunciated in *Armendariz, supra*, 24 Cal.4th 83. After a hearing on September 11, 2003, the court ordered supplemental briefing, which the parties filed thereafter. A second hearing on the motion took place on October 21, 2003.

In its order entered on October 24, 2003, the court denied the motion. The court stated: "After consideration of the papers on file and the arguments of counsel, the motion is DENIED. The agreement is unenforceable because it is unconscionable. The unconscionability cannot be cured through severance or restriction. [*Armendariz*]."

Defendant filed timely its notice of appeal on November 6, 2003. The order denying defendant's motion to compel arbitration is directly appealable. (See Code Civ. Proc., § 1294 ["aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration"]; see also *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349 [79 Cal.Rptr.2d 308, 965 P.2d 1178].)

---

[9] The complaint did not allege when this unsatisfactory evaluation and demotion occurred; we infer, however, from the pleading that the adverse employment action took place sometime between December 2002 and May 2003.

## DISCUSSION

### I. Standard of Review

The determination of arbitrability is a legal question subject to de novo review. (*Arista Films, Inc. v. Gilford Securities, Inc.* (1996) 43 Cal.App.4th 495, 501 [51 Cal.Rptr.2d 35].) We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].) Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 650 [9 Cal.Rptr.3d 422] (*Abramson*).)

In this instance, the only extrinsic evidence concerning the subject arbitration agreement was that presented by plaintiff, namely, the Nyulassy and Widmann declarations to the effect that the employment agreement (including its mandatory arbitration clause) was nonnegotiable. Defendant offered no conflicting evidence that was extrinsic to the settlement agreement and employment agreement themselves. Accordingly, we review de novo the trial court's denial of the motion.

### II. Issues on Appeal

Defendant contends that the trial court erred in concluding that the arbitration clause in the employment agreement was unconscionable. It asserts that the court's ruling disregarded the public policy favoring arbitration. Defendant claims that the court ignored the critical distinction between the "postdispute" circumstances surrounding the execution of the employment agreement here, and the typical "predispute" situation proscribed by *Armendariz* in which a mandatory arbitration agreement is imposed upon the employee by the employer. Defendant argues further that, because plaintiff executed the employment agreement as part of an overall settlement of a prior dispute with defendant and defendant's predecessor, plaintiff's claims that the arbitration clause is unconscionable and against public policy necessarily fail.

Our analysis of defendant's contentions requires a brief overview of general law concerning arbitration agreements, unconscionable contracts, and the Supreme Court's holdings in *Armendariz, supra*, 24 Cal.4th 83, and in *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*).

III. *Applicable Law*

A. *Arbitration agreements*

Code of Civil Procedure section 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." The California statute corresponds with federal law (i.e., the Federal Arbitration Act), which states that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

California courts have uniformly acknowledged that "[t]here is a strong public policy in favor of arbitration agreements." (*Blake v. Ecker* (2001) 93 Cal.App.4th 728, 741 [113 Cal.Rptr.2d 422]; see also *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971–972 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) In light of this policy favoring arbitration, "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. [Citations.]" (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 [197 Cal.Rptr. 581, 673 P.2d 251].)

"Despite the strong policy favoring arbitration, there are circumstances in which California courts may invalidate or limit agreements to arbitrate. Employing 'general contract law principles,' courts will refuse to enforce arbitration provisions that are 'unconscionable or contrary to public policy.' [Citation.]" (*Abramson, supra,* 115 Cal.App.4th at p. 651, quoting *Armendariz, supra,* 24 Cal.4th at p. 99.)

B. *Public policy considerations: Armendariz & Little*

Four years ago, in *Armendariz,* the Supreme Court considered a challenge to a mandatory arbitration clause contained in the employment agreements of two employees. (*Armendariz, supra,* 24 Cal.4th 83.) The employees claimed that, as a matter of law, they could not be compelled to arbitrate their statutory discrimination claims under the Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA). (*Armendariz, supra,* 24 Cal.4th at p. 90.) The court rejected the blanket view that such mandatory employment arbitration agreements are per se invalid with respect to the assertion of FEHA claims. (*Id.* at p. 96.) Instead, it "conclude[d] that such claims are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights." (*Id.* at p. 90.)

Such vindication of statutory rights meant that the arbitration agreement perforce needed to "meet certain minimum requirements." (*Armendariz,*

*supra*, 24 Cal.4th at p. 91.) Adopting the standards described by the District of Columbia Circuit in *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 [323 U.S.App.D.C. 133] (*Cole*), the court in *Armendariz* held that "[s]uch an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' " (*Armendariz, supra*, 24 Cal.4th at p. 102, quoting *Cole, supra*, 105 F.3d at p. 1482.)

Last year, the Supreme Court extended its holding in *Armendariz* to certain employee claims other than FEHA discrimination claims. (*Little, supra*, 29 Cal.4th 1064.) The employee in *Little* asserted that he was wrongfully demoted and then terminated in retaliation for his reporting of warranty fraud. (*Id.* at p. 1069.) He therefore alleged, inter alia, a *Tameny* claim[10] for wrongful termination in violation of public policy. (*Ibid.*) Plaintiff urged that, as was the case with FEHA claims, a mandatory arbitration agreement relating to an employee claim for wrongful termination in violation of public policy was subject to the same "minimum requirements" enunciated in *Armendariz*. (*Id.* at p. 1076.)

The Supreme Court agreed. It held that "a legitimate *Tameny* claim is designed to protect a public interest and therefore ' "cannot be contravened by private agreement." ' (*Armendariz, supra*, 24 Cal.4th at p. 100.) In other words, an employment agreement that required employees to waive claims that they were terminated in violation of public policy would itself be contrary to public policy. Accordingly, because an employer cannot ask the employee to waive *Tameny* claims, it also cannot impose on the arbitration of these claims such burdens or procedural shortcomings as to preclude their vindication. Thus, the *Armendariz* requirements are as appropriate to the arbitration of *Tameny* claims as to unwaivable statutory claims." (*Little, supra*, 29 Cal.4th at p. 1077.) The court reasoned that "[t]he *Armendariz* requirements are therefore applications of general state law contract principles regarding the unwaivability of public rights to the unique context of arbitration . . . . And . . . there is no reason under *Armendariz*'s logic to distinguish between unwaivable statutory rights and unwaivable rights derived from common law." (*Id.* at p. 1079.)

As noted, Plaintiff argues that the mandatory employment arbitration agreement is both unconscionable and fails to meet the five *Cole* requirements as enunciated in *Armendariz*. As we discuss *post*, we agree that the

[10] *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330].

arbitration agreement is unconscionable; thus, the trial court's decision to deny the motion to compel arbitration on that basis was proper. Therefore, we need not address whether the trial court could have also denied enforcement of the arbitration agreement because it violates public policy, in that it fails to meet the five minimum requirements for lawful arbitration agreements enunciated in *Armendariz, supra,* 24 Cal.4th 83. (See *Hiser v. Bell Helicopter Textron, Inc.* (2003) 111 Cal.App.4th 640, 655 [4 Cal.Rptr.3d 249] [appellate courts generally "decline to decide questions not necessary to the decision"].)

## C. *Unconscionable contracts*

■ An arbitration agreement—in order to be enforceable, and irrespective of whether public or only private rights are implicated—must also satisfy traditional contract standards of conscionability. As we have recently held: "In addition to satisfying the *Armendariz* requirements, an agreement to arbitrate public rights necessarily must be conscionable as well. That conclusion inevitably follows from the great deference accorded unwaivable public rights by both the Legislature and the California Supreme Court. (See, e.g., *Armendariz, supra,* 24 Cal.4th at pp. 101–102; *Little, supra,* 29 Cal.4th at p. 1079.) If agreements to arbitrate claims arising from ordinary private rights must meet conscionability standards, then certainly those that affect revered public values warrant the same consideration." (*Abramson, supra,* 115 Cal.App.4th at p. 655.)

"Unconscionability is a judicially created doctrine, which the Legislature codified in 1979. (Civ. Code, § 1670.5, subd. (a). [Citations.]) Whether an agreement is unconscionable depends on circumstances at the time it was made. (Civ. Code, § 1670.5, subd. (a).)" (*Abramson, supra,* 115 Cal.App.4th at p. 655.)

In *Little,* the Supreme Court succinctly described the applicable law: "To briefly recapitulate the principles of unconscionability, the doctrine has ' "both a 'procedural' and a 'substantive' element," the former focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining power, the latter on " 'overly harsh' " or " 'one-sided' " results.' (*Armendariz, supra,* 24 Cal.4th at p. 114.) The procedural element of an unconscionable contract generally takes the form of a contract of adhesion,[11] ' "which, imposed and

---

[11] While procedural unconscionability usually occurs through a finding that the contract is one of adhesion, this is not necessarily the case. "So let us be quite clear about it: Adhesion is not a prerequisite for unconscionability." (*Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1409 [7 Cal.Rptr.3d 418].) "What was oblique in *Graham* [*v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165]], though, has now become clear in *Little*. 'The procedural element of an unconscionable contract *generally* takes the form of a contract of adhesion.' (*Little, supra,* 29 Cal.4th at p. 1071, italics added; [citation.]) That is, you can show

drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." ' [Citation.]" (*Little, supra*, 29 Cal.4th at p. 1071, quoting *Armendariz, supra*, 24 Cal.4th at p. 113.)

" 'Substantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to "shock the conscience." ' [Citations.]" (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 [83 Cal.Rptr.2d 348].) A contractual provision that is substantively unconscionable "may take various forms, but may generally be described as unfairly one-sided." (*Little, supra*, 29 Cal.4th at p. 1071.) "[T]he paramount consideration in assessing [substantive] conscionability is mutuality." (*Abramson, supra*, 115 Cal.App.4th at p. 657.)

We have recently identified on a nonexclusive basis certain types of provisions in mandatory employment arbitration contracts that have been held substantively unconscionable. (See *Abramson, supra*, 115 Cal.App.4th at pp. 656–657.) Those cases include: (1) where the agreement unfairly favored the employer by allowing for appeal of arbitration awards in excess of $50,000 (*Little, supra*, 29 Cal.4th at pp. 1072–1074); (2) where the employer imposed forum costs on the employee (*McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 93 [134 Cal.Rptr.2d 446]); (3) where the employee's damage remedy was limited, the employee was required to pay all costs, and the required hearing location was Oakland (*Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, 781 [102 Cal.Rptr.2d 435]); and (4) where the contract provided that, pending the arbitration hearing, the employee lost his job, salary, and benefits. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1542 [60 Cal.Rptr.2d 138].)

" 'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.] It focuses on factors of oppression and surprise. [Citation.] The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. [Citations.]" (*Kinney v. United HealthCare Services, Inc., supra*, 70 Cal.App.4th at p. 1329.) "The component of surprise arises when the challenged terms are 'hidden in a prolix printed form drafted by the party seeking to enforce them. [Citation.]' (*Kinney v. United HealthCare Services, Inc., supra*, 70 Cal.App.4th at p. 1329.) Where an adhesive contract is oppressive, surprise need not be shown." (*Abramson, supra*, 115 Cal.App.4th at p. 656.)

---

procedural unconscionability by a showing of adhesion, but it is not the only way. There will be cases . . . where procedural unconscionability is obvious without the need to establish that the contract is one of adhesion." (*Harper v. Ultimo, supra*, at p. 1410.)

■ In evaluating a claim of unconscionability, courts are mindful of the interplay between "procedural" and "substantive" unconscionability: " 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' (*Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1533 . . . .) But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.)

## IV. *The Arbitration Agreement Is Unconscionable*

We apply the above stated principles to our de novo review of the arbitration clause at issue in the employment agreement between plaintiff and defendant. We start with what is, in this instance, the easier issue: the question of substantive unconscionability.

### A. *Substantive unconscionability*

The employment agreement requires *plaintiff only* to arbitrate any and all of his employment claims. The arbitration clause plainly contains only a unilateral agreement to arbitrate; any claims that defendant may have that arise out of plaintiff's employment are not subject to the arbitration clause. Defendant's argument to the contrary notwithstanding, the parties' agreement to arbitrate disputes concerning "the validity, interpretation, or enforcement" of the *settlement agreement* does not infuse an element of bilaterality into the *employment agreement.* It is true that the settlement agreement contains a bilateral agreement to arbitrate *settlement-related disputes*; that agreement, however, does not extend to *all* disputes arising after plaintiff and defendant's predecessor settled the prior case and plaintiff commenced employment with defendant. A dispute arising out of plaintiff's employment, occurring many years after the settlement—such as the present dispute—would not invoke the arbitration provision of the settlement agreement.

The employment agreement—in addition to compelling plaintiff to arbitrate all of his disputes with defendant—requires him to submit to discussions with his supervisors in advance of, and as a condition precedent to, having his dispute resolved through binding arbitration. While on its face, this provision may present a laudable mechanism for resolving employment disputes informally, it connotes a less benign goal. Given the unilateral nature of the

arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute resolution mechanism (i.e., one without a neutral mediator) suggests that defendant would receive a "free peek" at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration.

Moreover, the unilateral arbitration clause places time limitations upon plaintiff's assertion of any claims against defendant. In limiting the time to assert a claim to a maximum of 180 days of the date of his employment termination or "such other dispute or controversy first arose," plaintiff's time for bringing a claim is shortened, in some instances, by a period of *more than three and one-half years.*[12] Of course, the employment agreement limits none of the employer's rights against the employee (including the statutory time for bringing suit against him).

We have little trouble concluding that, taken together, these three aspects of the mandatory employment arbitration agreement render it substantively unconscionable.[13] We now turn to the issue of procedural unconscionability.

### B. *Procedural unconscionability*

The evidence is less dominant on the question of whether the mandatory arbitration clause in the employment agreement is procedurally unconscionable. We first summarily dispose of any claim that the employment agreement is procedurally unconscionable due to "surprise."

Plaintiff did not submit evidence that he was "surprised" by the arbitration clause. The subject agreement is less than two pages, and the arbitration clause is in all capital letters, thereby alerting the reader that it might contain matters of particular importance. Further, plaintiff was represented by an attorney at the time he executed the settlement agreement and employment agreement. That attorney—the same attorney representing plaintiff in the present case—presumably explained the terms of the documents to his client.

---

[12] Potential claims arising out of plaintiff's employment carry a variety of statutes of limitation; however, claims for breach of his employment agreement with defendant would have a four year statute of limitations. (See Code Civ. Proc., § 337, subd. 1; *Sequeira v. Rincon-Vitova Insectaries, Inc.* (1995) 32 Cal.App.4th 632, 634 [38 Cal.Rptr.2d 264].) Furthermore, while we conclude that the shortened limitations period in the employment agreement is *one factor* leading us to hold that the contract is substantively unconscionable, we do not mean to suggest that this factor, *by itself,* would compel this conclusion. (See *Soltani v. Western & Southern Life Ins. Co.* (9th Cir. 2001) 258 F.3d 1038, 1044 [holding that, under the facts presented there, shortened limitations provision was not substantively unconscionable].)

[13] Defendant argues—in only the briefest of terms—that the employment agreement is substantively conscionable. For the reasons we have enumerated, we obviously reject defendant's contention.

The mandatory employment arbitration agreement is not procedurally unconscionable due to "surprise." We simply cannot conclude that the challenged terms are "hidden in a prolix printed form drafted by the party seeking to enforce them. [Citations.]" (*Kinney v. United HealthCare Services, Inc., supra*, 70 Cal.App.4th at p. 1329.)

Turning then to "oppression," the employment agreement was a standard form utilized by defendant at the time for the hiring of its employees. It was undisputed that plaintiff—as part of the process of being hired by defendant in connection with the settlement of the prior case—was required to sign the employment agreement. Likewise, the undisputed evidence was that the terms of the agreement (other than the "at-will" provision) were nonnegotiable.

Defendant attempts to distinguish this case from others in which courts have held mandatory employment arbitration agreements unconscionable; here, the parties agreed to certain changes and additions to the employment agreement that were confirmed in the settlement agreement. Of the greatest significance in this respect, the parties agreed that plaintiff could be terminated only for good cause for a period of three years after his employment commenced. Defendant also urges that the arbitration agreement is not unconscionable because it was entered into as part of the settlement of a prior dispute. Defendant characterizes the agreement as a "postdispute" arbitration agreement that is excepted from the requirements of *Armendariz*.

■ We reject defendant's contention—as a general proposition—that the discussion of unconscionability contained in *Armendariz expressly excepted* the circumstance where an employer and employee entered into a binding arbitration agreement after a dispute had arisen.[14] There, the Supreme Court emphasized that the five *Cole* requirements for a mandatory employment arbitration agreement "would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen. In those cases, employees are free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights." (*Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.) This limitation plainly applies to the minimum requirements discussed in *Armendariz* for lawful employment arbitration agreements implicating nonwaivable statutory rights. We do not read *Armendariz* to hold that mandatory employment arbitration agreements are *necessarily conscionable* because they are entered into by the parties "postdispute."[15]

---

[14] Defendant cites footnote 8 of *Armendariz* for this assertion. (*Armendariz, supra*, 24 Cal.4th at p. 103, fn. 8.)

[15] Defendant at oral argument—over plaintiff's objection—brought to this court's attention a case decided after briefing was completed: *Omar v. Ralphs Grocery Co.* (2004) 118

■ Moreover, we do not agree that the mandatory employment arbitration agreement here is a "postdispute" agreement. We acknowledge that the parties' settlement agreement (including the arbitration provisions therein) *is* a "postdispute" agreement; any action to enforce or interpret that agreement, in our view, would relate back to the prior dispute between plaintiff and defendant's predecessor. The employment agreement, however, contemplated that the parties were starting a new employer-employee relationship with specific terms. Unlike an action concerning the settlement agreement, a dispute arising out of the new employment relationship between the parties—which dispute might occur many years after the 1997 settlement of the prior case—would not be one that related to the prior dispute.

■ Further, we cannot agree that the facts emphasized by defendant *negate a finding* of procedural unconscionability. Plaintiff had been unemployed for nearly three years while the prior case was pending and he needed the job from defendant to support his family. The fact that plaintiff was able to negotiate a three-year "good cause" provision in the employment agreement did not, of itself, place him on equal footing with defendant in the negotiation process. We recently—in *Abramson*—rejected a similar argument by the employer: "Plaintiff's ability to negotiate other aspects of his employment with [his employer] has no bearing on the question of whether he had power to negotiate the *arbitration* provision." (*Abramson, supra,* 115 Cal.App.4th at p. 662; see also *Graham v. Scissor-Tail, Inc., supra,* 28 Cal.3d at p. 812 [unconscionability claim upheld, notwithstanding plaintiff's status as "an experienced promoter and producer of musical concerts"]; *Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1533 [contract determined to be adhesive, despite plaintiff being "a successful and sophisticated corporate executive"].)

■ Defendant urges that the agreement here was not unconscionable because plaintiff was represented by an attorney at the time it was executed. We agree that this fact has significance—particularly in the context of any claim that the agreement was procedurally unconscionable because of "surprise." The uncontroverted evidence, however, from plaintiff and his counsel was that the mandatory arbitration provision in the employment agreement

---

Cal.App.4th 955 [13 Cal.Rptr.3d 562] (*Omar*). Defendant argues that this recent decision supports its contention that the mandatory employment arbitration agreement here is a "postdispute" agreement that is therefore conscionable. We exercise our discretion to consider this authority cited by defendant, but conclude that *Omar* is both distinguishable on its facts and does not hold that a "postdispute" mandatory employment arbitration agreement is necessarily conscionable. Indeed, the court in *Omar* did not decide the question of conscionability of either of the two arbitration agreements (predispute and postdispute) being considered; it remanded the case to the trial court to determine whether either agreement was enforceable, and if so, whether the employee's claims were covered by the enforceable arbitration agreement. (*Id.* at p. 961.)

was nonnegotiable. Thus, on the facts presented here, we are not prepared to say that the mere fact that plaintiff was represented by counsel in the negotiation and execution of the employment agreement prevents him from later asserting that the agreement is unconscionable.[16]

Admittedly, plaintiff's negotiating position in this case is not at the far end of the spectrum customarily seen in cases where the employee has an absence of any bargaining power.[17] There was nonetheless—based upon the evidence presented, including the absence of negotiation of the standard form arbitration clause and plaintiff's need for employment—a degree of "inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." (*Kinney v. United HealthCare Services, Inc., supra,* 70 Cal.App.4th at p. 1329.)

■ In short, we conclude that there is oppression presented in the parties' mandatory employment arbitration agreement. The facts presented here—including the significant degree of substantive unconscionability discussed above, and the absence of evidence that the arbitration clause was the subject of specific bargaining by the parties—warrant such a finding. We therefore conclude that the employment agreement is procedurally unconscionable.

### C. *Interplay between procedural and substantive unconscionability*

Having found that the mandatory employment arbitration agreement is both substantively and procedurally unconscionable, we next evaluate the interplay between these two findings upon the ultimate determination of whether the agreement is unconscionable. In doing so, we apply a "sliding scale" described in *Armendariz;* we compare the extent of regularity in the procedural process by which the contract was entered into with the degree of

---

[16] But see *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386 [54 Cal.Rptr.2d 477], in which the court held that a provision in a two-and-one-half page employment agreement limiting recovery of commissions was *not* unconscionable because, inter alia, the employee was a sophisticated businesswoman who had the agreement reviewed by her counsel before she signed it. (*Id.* at pp. 1391–1392.) The court stated in a footnote: "Some courts have considered the presence and advice of counsel to constitute circumstantial, if not conclusive, evidence that a contract is not unconscionable. (See e.g., *Resource Management Co. v. Weston Ranch* (Utah 1985) 706 P.2d 1028, 1045; *Bernina Distributors, Inc. v. Bernina Sewing Mach.* (10th Cir. 1981) 646 F.2d 434, 440.)" (*American Software, Inc. v. Ali, supra,* at p. 1392, fn. 3.)

[17] The Supreme Court in *Armendariz* acknowledged that, "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz, supra,* 24 Cal.4th at p. 115.)

harshness or unreasonableness of the substantive terms of the contract. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)

 As we have noted, the mandatory arbitration clause in the employment agreement has at least three features that make it substantively unconscionable. Of the greatest overall significance is the fact that it imposes on the employee only a unilateral obligation to arbitrate: "In assessing substantive unconscionability, the paramount consideration is mutuality." (*Abramson*, *supra*, 115 Cal.App.4th at p. 664.) Given the high degree of substantive unconscionability therefore, we readily hold that this fact—coupled with the lower quantum of procedural unconscionability discussed *ante*—warrants the conclusion that the mandatory arbitration agreement is unconscionable.

### D. *Severability*

Having found—consistent with the trial court's conclusion—that the mandatory employment arbitration agreement is unconscionable, it remains for us to consider whether the court's refusal to sever the agreement's unconscionable provisions was appropriate. We conclude that it was.

Civil Code section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Our Supreme Court concluded, after a review of the legislative history of Civil Code section 1670.5, that "the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." (*Armendariz*, *supra*, 24 Cal.4th at p. 122.)

Under the facts before it in *Armendariz*, the Supreme Court held that there were "two factors [that] weigh[ed] against severance of the unlawful provisions." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) One concerned the existence of *multiple* unlawful provisions. (*Ibid.*) Second, the arbitration agreement there lacked mutuality to such an extent "that there [was] no single provision a court [could] strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (*Id.* at pp. 124–125.)

 The mandatory arbitration clause in the employment agreement here is substantively unconscionable because it lacks any degree of mutuality,

imposes upon plaintiff a prearbitration resolution procedure controlled by defendant, and severely limits the time within which plaintiff may demand arbitration to vindicate his rights. As was true in *Armendariz*, there are *multiple* provisions in the agreement rendering it substantively unconscionable. Further, the subject agreement lacks any degree of mutuality; there is no single provision that may be stricken or restricted "in order to remove the unconscionable taint." (*Armendariz, supra*, 24 Cal.4th at p. 125.) We conclude that the arbitration clause is permeated by unconscionablility. Therefore, we hold that the trial court complied with Civil Code section 1670.5 by refusing to sever or restrict the unconscionable provision of the employment agreement.

## DISPOSITION

Our de novo review of the record leads us to conclude that the arbitration clause in the employment agreement is unconscionable. Therefore, we affirm the trial court's order denying defendant's motion to compel arbitration.

Rushing, P. J., and Premo, J., concurred.