Filed 4/27/16  Earnest v. Windsor El Camino Care Center CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| ANTHONY L. EARNEST, | C078266 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2014-00168094-CU-WT-GDS) |
| v. | |
| WINDSOR EL CAMINO CARE CENTER, LLC, et al., | |
| Defendants and Appellants. | |

Plaintiff and respondent Anthony L. Earnest sued defendants and appellants Windsor El Camino Care Center, LLC (Windsor), Windsor Healthcare Management, Inc., and CPE HR, Inc. (CPE), alleging various employment-related causes of action.[1] Windsor and CPE (collectively, defendants) moved to compel arbitration and stay the proceedings based on a written arbitration agreement signed by Earnest, but the trial court denied the motion, finding the arbitration agreement is unenforceable.  On appeal,

---

[1]  Windsor Healthcare Management, Inc., did not participate in the motion to compel arbitration, and it is not a party to the instant appeal.

defendants challenge this ruling. We will affirm the order denying defendants' motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Earnest had worked as a certified nursing assistant at the residential skilled nursing home and convalescent hospital that came to be run by Windsor (the facility) since 1990, and was terminated in 2014. Earnest was hard of hearing; he required hearing aids in both ears and communicated by reading lips and using American Sign Language (ASL) by the time Windsor took over operation of facility in 2007. When Windsor took over operations of the facility, it hired almost all existing employees, including Earnest.

According to Windsor and CPE (which provided outsourced human resources for Windsor), when Windsor began operating the facility, a corporate representative of CPE presented each "newly-hired employee," individually, or as part of a small group, with a packet of documents. That packet included an "Agreement to Be Bound by Alternative Dispute Resolution Policy" (the agreement), which incorporated by reference an Alternative Dispute Resolution Policy (the policy) that was also physically attached to the agreement. It was defendants' "custom and practice" to provide each employee with his or her own copy of the policy. Defendants also attested that CPE representatives, during the presentation of the documents to the employees, explained what the documents were and answered questions about the documents. Additionally, if Earnest had asked any substantive questions when he was presented with the documents, it would have been CPE's custom and practice to record those questions and any provided responses in Earnest's personnel file; Earnest's personnel file does not contain any such record.

Earnest recalled that he signed the agreement "as part of a large set of other documents which [he] was told [he] was required to sign in order to continue working at the facility and [to] keep [his] job." He was also told that it was a new policy and that he would have to sign "on the spot" in order to receive his paycheck for work already

2

performed. No one discussed the agreement with him, and when he "tried to ask questions, . . . they went unanswered." He was not provided an opportunity to negotiate the terms of the agreement or to take the agreement with him to review before signing. Had he been provided an opportunity to ask questions, he would have needed an ASL interpreter to facilitate that process. He was not provided a copy of the policy after signing the agreement, and he was never provided a copy of the "rules of the Employment Arbitration Procedures of the American Arbitration Association" referenced in the policy as governing any arbitration proceeding.

The agreement provides, in pertinent part, that the employee agrees to be bound by the policy should any "employment disputes arise," and in particular that this policy applies "to all disputes relating to termination of employment, unlawful discrimination, alleged sexual harassment or other unlawful harassment." The agreement further provides that it "is the exclusive means for resolving covered disputes" (uppercase omitted), and that by signing the agreement the employee waives the right to a judge or jury to decide any such dispute.[2] The policy likewise states that it is mandatory for all employees, and that the procedures set forth in the policy are "the exclusive means for resolving covered disputes" (uppercase omitted). The policy limits the universe of

_____

[2] Specifically, the agreement states, "In consideration for and as a material condition of employment with the company, and in consideration for the company's return agreement to be bound by the company's ADR program and pay the arbitration fees as described therein, [the employee] agree[s] that the [CPE] alternative dispute resolution policy attached hereto which provides for final and binding arbitration, is the exclusive means for resolving covered disputes; no other action may be brought in court or in any other forum. [The employee] understand[s] that this agreement is a waiver of all rights to a civil court action for a dispute relating to termination of employment, unlawful discrimination or alleged sexual harassment or other unlawful discrimination and/or harassment; only an arbitrator, not a judge or jury, will decide the dispute." (Uppercase omitted.)

covered disputes to "any dispute arising out of or related to termination of employment or alleged unlawful discrimination and/or harassment."[3]

The policy also provides that to initiate alternative dispute resolution procedures, an employee must deliver a written request to CPE within the same time as would apply to the filing of a civil complaint. Once initiated, a single arbitrator would be mutually selected by the employee and the company, or, if one could not be agreed upon, then according to the method of a federal or state mediation and conciliation service, such as the American Arbitration Association. "[T]he provisions and procedures set forth in the Employment Arbitration Procedures of the American Arbitration Association" would govern the arbitration proceedings, and California or federal law would govern substantive issues. Discovery would be engaged in to the same extent permitted by the California Code of Civil Procedure, with the arbitrator deciding any discovery disputes. The arbitrator would also be required to issue a written decision and award, and each party would be responsible to pay its own attorney fees and expenses and the cost of a reporter's transcript, but the company would pay all fees and expenses unique to the arbitration.

---

[3] Specifically, the policy defines "covered disputes" as "any dispute arising out of or related to termination of employment or alleged unlawful discrimination and/or harassment including, but not limited to . . . : [¶] [a]lleged violations of federal, state and/or local constitutions, statutes or regulations; [¶] [c]laims of unlawful harassment or discrimination which cannot be resolved by the parties or during an investigation by an administrative agency (such as the Department of Fair Employment and Housing or the Equal Employment Opportunity Commission); [¶] [c]laims based on any purported breach of contract (including breach of the covenant of good faith and fair dealing, claims of wrongful termination or constructive termination); [¶] [c]laims of unfair demotion or reduction in pay; [¶] [c]laims based on any purported breach of duty arising in tort, including alleged violations of public policy; and [¶] [c]laims of defamation, pre[-] and post-termination."

The trial court, after reviewing the agreement, the policy, and the evidence summarized above, denied defendants' motion to compel arbitration, finding the agreement was both procedurally and substantively unconscionable. It found sufficient evidence that the agreement was procedurally unconscionable from the combined facts of Earnest not being provided with a copy of the governing procedural rules, the agreement being provided to Earnest as part of a large set of documents that he was told he had to sign to continue working and to keep his job, Earnest being told he would not receive his paycheck without signing the agreement, Earnest's questions going unanswered, and Earnest being told the agreement was merely a new policy he needed to sign. The trial court also found the agreement to be "substantively unconscionable because it is one-sided, only covering claims that an employee would allege against an employer."

Defendants timely appealed from the trial court's order.

## DISCUSSION

Defendants contend the trial court erred in finding the agreement unenforceable because it is neither procedurally nor substantively unconscionable. We conclude the trial court properly found procedural unconscionability based on the evidence presented and substantive unconscionability based on the agreement's limited universe of "covered disputes." Accordingly, we affirm the trial court's order denying defendants' motion to compel arbitration.

### 1.0     Standard of Review

"The determination of arbitrability is a legal question subject to de novo review. [Citation.] We will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo." (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277 (*Nyulassy*).)

5

Here, the extrinsic evidence considered by the trial court included the declarations of Earnest and representatives of Windsor and CPE. These declarations included conflicting evidence regarding the circumstances under which the agreement was signed, i.e., whether Earnest was provided with a copy of the policy, whether the policy and agreement were explained to him, and whether he was given an opportunity to have questions answered. As these facts are relevant only to the determination of procedural unconscionability, we review de novo the trial court's finding of substantive unconscionability. To the extent the trial court's finding of procedural unconscionability is premised on the conflicting evidence set forth above, we review that finding to determine whether it is supported by substantial evidence. But to the extent that finding is based on undisputed evidence—Earnest's declaration that he had to sign the agreement "on the spot" as part of a larger hiring agreement to keep his job and to receive his paycheck—we review the arbitrability decision de novo.

## 2.0    Doctrine of Unconscionability

" ' "[U]nconscionability has both a 'procedural' and a 'substantive' element," the former focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining power, the latter on " 'overly harsh' " or " 'one-sided' " results. [Citation.] "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Carlson v. Home Team Pest Defense, Inc.* (2015)

239 Cal.App.4th 619, 630.)  Additionally, the burden of proving unconscionability rests with the party resisting arbitration, here Earnest.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*)*, LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*).)

**3.0    Procedural Unconscionability**

Windsor and CPE contend the trial court erred in finding the agreement was procedurally unconscionable.  As noted above, a finding of procedural unconscionability requires a showing of oppression or surprise.  Oppression may be found where the contract terms are not open to negotiation or where there is not a meaningful choice, and surprise may be found where the challenged provision is hidden in an otherwise lengthy document.  (*Pinnacle*, *supra*, 55 Cal.4th at p. 247.)  We conclude the trial court did not err in finding the agreement to be procedurally unconscionable.

Defendants' argument that the agreement is not procedurally unconscionable is essentially that though the agreement may be adhesive, "it was presented as a separate, freestanding document" in a packet of documents and not "deceptively buried deep within a lengthy agreement," it was signed before Earnest began working for defendants, and it was explained to Earnest with an opportunity to review it and to ask questions.  However, there was conflicting evidence presented to the trial court that the agreement was included in "a large set of other documents," that Earnest was already working at the facility when he was told he had to sign the agreement to "keep [his] job," that he was told he had to sign it "on the spot," that the agreement and policy were not explained to him, and that when he "tried to ask questions, . . . they went unanswered."  Additionally, Earnest presented undisputed evidence that he had not been provided a copy of the governing rules referenced in the policy, and, more importantly, that he was told he had to sign the agreement to collect his paycheck for work already performed.

After reviewing the evidence presented by Earnest and defendants, we conclude the trial court did not err in finding the agreement to be procedurally unconscionable.

7

There was substantial evidence to support the trial court's factual findings based on the conflicting declarations presented by Earnest and defendants. Additionally, those factual findings combined with the undisputed evidence warrant a finding that the manner in which the agreement was entered into demonstrates a high level of oppression resulting in procedural unconscionability.

We also reject defendants' contention that the trial court could not conclude Earnest has shown procedural unconscionability without conducting an evidentiary hearing. The only authority cited by defendants in this regard is *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, which holds that in finding facts relevant to the enforcement of an arbitration agreement, the trial court generally ascertains the facts through "affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion" (*id.* at pp. 413-414). Here, defendants have not shown that the trial court abused its discretion by relying on the declarations and documentary evidence presented by the parties.

**4.0     Substantive Unconscionability**

Defendants also contend the trial court erred in finding the agreement to be substantively unconscionable based on its lack of mutuality in the obligation to arbitrate. We disagree.

Substantive unconscionability, as noted above, exists where the agreement is harsh or one-sided. " '[T]he paramount consideration in assessing [substantive] unconscionability is mutuality.' " (*Nyulassy*, *supra*, 120 Cal.App.4th at p. 1281.) Thus, arbitration agreements require a " 'modicum of bilaterality,' " meaning the employer cannot require an employee to submit to arbitration to pursue a claim but not accept the same limitation when it would act as plaintiff against the employee. (*Armendariz v. Foundation Health Psychcare Services*, *Inc.* (2000) 24 Cal.4th 83, 117) The arbitration agreement need not "mandate the arbitration of all claims between employer and

8

employee," but it may be deemed to "lack[] basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Id.* at p. 120.) Even if the arbitration agreement does not expressly exclude employer claims, where it does not apply to "*all* disputes," but is limited to claims an employee has against an employer, the agreement is unilateral. (*Nyulassy*, *supra*, at pp. 1273 & fn. 4, 1282.)

Here, the agreement limits the universe of covered disputes to those an employee would bring against an employer. The agreement provides that the policy "appl[ies] to all disputes relating to termination of employment, unlawful discrimination, alleged sexual harassment or other unlawful harassment." Additionally, the policy defines covered disputes to "include any dispute arising out of or related to termination of employment or alleged unlawful discrimination and/or harassment . . . ." Certainly, an employer would not raise a claim against an employee for termination, discrimination, or harassment.

Defendants argue the agreement is not one-sided because "[a]ny factual scenario that would give rise to a legal claim by an employer against its employee would also cause the employer to terminate that employee's employment," meaning that a dispute subject to the agreement as "arising out of or related to termination of employment" is as likely to be brought by an employer as an employee. We reject this strained interpretation of the agreement's and the policy's language.

First, to interpret the language of the agreement and policy as applying to claims by an employer against an employee, we must accept that all civil claims an employer would seek to pursue against an employee necessarily arise from acts or omissions that would result in termination. However, we can contemplate potential civil claims the employer may seek to pursue against an employee that would not necessarily result in a termination—i.e., recovery of an overpayment of salary or benefits—which would then

9

not be a "covered dispute" subject to the agreement. Thus, defendants' interpretation of the relevant language is not compelling. Second, and most telling, is the policy's language regarding the manner in which arbitration proceedings are initiated. The policy specifically limits initiation of proceedings to employee-initiated claims, stating that "[i]n the event a dispute should arise and you [(the employee)] wish to initiate these procedures, deliver a written request for alternative dispute resolution to the Company." The policy provides no language indicating how Windsor or CPE would initiate arbitration proceedings against an employee.

Based on our de novo review of the agreement and the policy, we conclude the trial court did not err in finding the agreement to be one-sided. Additionally, in light of the high level of procedural unconscionability demonstrated by the evidence presented in this case, we conclude the trial court did not err in finding the procedural and substantive unconscionability of the agreement renders it unenforceable.

## DISPOSITION

The trial court's order denying Windsor's and CPE's motion to compel arbitration is affirmed. Respondent Earnest is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                    BUTZ          , J.

We concur:


    HULL          , Acting P. J.


    DUARTE        , J.


10