Filed 6/28/22  Mirzoyan v. West Coast Wound and Skin Care CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANI MIRZOYAN, | B310901 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20BBCV00378) |
| v. | |
| WEST COAST WOUND AND SKIN CARE INC., et al., | |
| Defendants and Appellants; | |
| ANTHONY SAIDIANI, | |
| Defendant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Reversed and remanded with instructions.

Clark Hill, Rafael G. Nendel-Flores and Monique A. Eginli for Defendants and Appellants West Coast Wound and Skin Care Inc. and Lydia Alsa.

No appearance for Defendant Anthony Saidiani.

Lyon Law, Geoffrey C. Lyon and Henry Harmeling IV for Plaintiff and Respondent.

_____

West Coast Wound and Skin Care Inc. (WCW) hired Ani Mirzoyan as an administrative employee in November 2019. Before the commencement of Mirzoyan's tenure at WCW, she and a representative of WCW executed an arbitration agreement covering claims or controversies arising out of her employment. Mirzoyan alleges WCW wrongfully terminated her in April 2020.

Mirzoyan filed suit against WCW, Lydia Alsa, and Anthony Saidiani, alleging a wrongful termination claim and various causes of action under the California Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.) and Labor Code sections 1102.5 and 1102.6. WCW and Alsa (collectively, appellants) moved to compel arbitration. The trial court denied the motion upon finding the arbitration agreement unconscionable. Although the court found the agreement was procedurally unconscionable only to a limited degree as an adhesion contract, the court concluded the agreement was substantively unconscionable because it requires only Mirzoyan to arbitrate her employment-related claims. Appellants seek review of the trial court's order denying their motion.[1]

The trial court did not err in finding that the arbitration agreement presented a low degree of procedural

_____

[1] Although appellants identified Saidiani as a party to this appeal in their civil case information statement, Saidiani has not made an appearance before this court.

2

unconscionability. We, however, disagree with the court's finding that the agreement requires only Mirzoyan to arbitrate her claims. Although the arbitration agreement was inartfully drafted, the text nonetheless reveals that both Mirzoyan and WCW agreed to submit their respective claims against each other to final and binding arbitration.

As to Mirzoyan's other claims of substantive unconscionability, we agree only as to two of them—a one-sided prearbitration condition requiring the employee but not the employer informally to attempt to negotiate her claims with the employer, and an attorney fees and costs provision requiring each side to bear its own attorney fees and costs incurred in arbitration. Because, however, these provisions are collateral to the purpose of the arbitration agreement and can be easily excised from the agreement, we sever them and otherwise enforce the arbitration agreement.

Lastly, we conclude Alsa may enforce the agreement as a third-party beneficiary, but remand to the trial court to determine, in the first instance, (a) whether Mirzoyan should be required to arbitrate her claims against Saidiani; and (b) whether the proceedings should be stayed pending completion of arbitration.

In sum, we reverse the order denying appellants' motion to compel and remand the matter for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

We summarize only those facts that are relevant to this appeal.

3

## 1.    *Mirzoyan's complaint*

On June 15, 2020, Mirzoyan filed a complaint against WCW, Alsa, and Saidiani.[2]  In the complaint, Mirzoyan alleges that from approximately November 2019 to her termination on or about April 17, 2020, she was employed as an " 'Intake Administrative Assistant' " at WCW.  Mirzoyan avers that Alsa was a "Scheduler" at WCW who "began to verbally harass [Mirzoyan] daily based on [Mirzoyan's] race" from on or about November 5, 2019 until Alsa was terminated in or around December 2019.  Mirzoyan asserts that Saidiani was the chief operating officer of WCW, and that he "created an objectively hostile working environment for [Mirzoyan]" and discriminated against Mirzoyan because of her pregnancy.  Mirzoyan alleges WCW terminated her on or about April 17, 2020 on account of her pregnancy and in retaliation for making certain complaints of unlawful discrimination.

The complaint levels the following fourteen causes of action:  (1) wrongful termination in violation of public policy against WCW; (2) gender/pregnancy discrimination under FEHA against WCW; (3) harassment based on gender/pregnancy under FEHA against WCW and Saidiani; (4) harassment based on disability under FEHA against WCW and Saidiani; (5) disability discrimination under FEHA against WCW; (6) retaliation for requesting and using accommodations for disabilities under FEHA against WCW; (7) failure to engage in a timely, good faith, interactive process to determine reasonable accommodation for

---

[2]  Curiously, appellants did not designate the complaint for inclusion in the clerk's transcript.  We, sua sponte, take judicial notice of this pleading.  (Evid. Code, §§ 452, subd. (d), 459.)

4

disability under FEHA against WCW; (8) failure to reasonably accommodate disabilities under FEHA against WCW; (9) pregnancy disability leave retaliation under FEHA against WCW; (10) pregnancy disability leave discrimination under FEHA against WCW; (11) harassment based on race under FEHA against Alsa; (12) failure to prevent and stop harassment, discrimination, and retaliation under FEHA against WCW; (13) retaliation for opposing violations of FEHA against WCW; and (14) whistleblower retaliation under Labor Code sections 1102.5 and 1102.6 against WCW.

2. ***Appellants' motion to compel arbitration and filings relating thereto***

On December 18, 2020, appellants moved to compel Mirzoyan to submit her claims to arbitration.[3] In support of the motion, appellants submitted the declaration of Dr. David Kay, WCW's chief executive officer. Dr. Kay attested that WCW provided Mirzoyan with an employment agreement and an arbitration agreement, both of which Dr. Kay (on behalf of WCW) and Mirzoyan signed on or about November 4, 2019. These documents were attached to Dr. Kay's declaration.

In Mirzoyan's opposition, she argued that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable. Mirzoyan did not contest appellants' assertions that (a) she and WCW executed the arbitration agreement, and (b) the agreement covers the claims alleged in her complaint.

---

[3] Although Saidiani appeared in the trial court proceedings, he did not join appellants' motion to compel arbitration.

5

Appellants filed a reply in support of their motion to compel.

### 3. *The trial court's order denying the motion to compel arbitration and appellants' notice of appeal*

On January 22, 2021, the trial court heard and denied appellants' motion to compel arbitration. The court found the arbitration agreement "does reflect some limited degree of procedural unconscionability" because it is a contract of adhesion. The court also concluded the arbitration agreement is substantively unconscionable because it "lacks mutuality between the parties." Specifically, the court found there exists under paragraphs 1 and 2 of the arbitration agreement "an obligation binding [Mirzoyan] to bring all workplace concerns and disputes to company attention, and later arbitration, but no reciprocal obligation binding WCW." The court declined to sever these unconscionable provisions from, and enforce the remainder of, the arbitration agreement on the ground that "an agreement's lack of mutuality creates an 'unconscionable taint' that permeates the entire agreement . . . ."

Appellants timely appealed the trial court's order denying their motion.[4]

### STANDARDS OF REVIEW

" 'In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate "if it determines that an agreement to arbitrate the controversy exists . . . ." [Citation.]

---

[4] "The denial of a motion to compel arbitration is an appealable order." (*Hernandez v. Ross Stores, Inc.* (2016) 7 Cal.App.5th 171, 176; Code Civ. Proc., § 1294, subd. (a).)

6

"[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . ." [Citation.]' " (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662 (*Western Bagel Co., Inc.*).)

Unconscionability is a defense to enforcement of an arbitration agreement. (See *Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 444–445 (*Lange*).) " ' "[U]nconscionability has both a 'procedural' and a 'substantive' element," the former focusing on " 'oppression' " or " 'surprise' " due to unequal bargaining power, the latter on " 'overly harsh' " or " 'one-sided' " results. [Citation.] "The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. . . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Id.* at p. 445.) "[I]f a trial court concludes that an arbitration agreement contains unconscionable terms, it then 'must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.' [Citation.]" (*Id.* at pp. 452–453.)

" 'In evaluating an order denying a motion to compel arbitration, " ' "we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' " [Citation.]' " (*Western Bagel Co., Inc., supra*, 66 Cal.App.5th at p. 662.) "We review a

7

trial court's order declining to sever . . . unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange*, *supra*, 46 Cal.App.5th at p. 453.)

## DISCUSSION

### A. The Arbitration Agreement Possesses Some Limited Degree of Procedural Unconscionability

The trial court did not err in finding that the arbitration agreement "does reflect some limited degree of procedural unconscionability" because it is an adhesion contract. Appellants do not challenge the trial court's finding that the arbitration agreement is an adhesion contract. In addition, Dr. Kay admitted in his declaration that WCW's offer of employment to Mirzoyan "was conditional based on [Mirzoyan] executing" the "standard stand-alone" arbitration agreement. This evidence indicates WCW presented the arbitration agreement to Mirzoyan as a condition of employment without any opportunity to negotiate its standardized terms.

Mirzoyan intimates that the trial court minimized the degree to which the agreement is procedurally unconscionable. Specifically, she argues the agreement contains an element of surprise because "the recitals and Par[agraph] 5 are intended to cause the reader to think the agreement requires all parties to mutually arbitrate all claims, when . . . only the employee's claims 'shall' go to arbitration, while the employer's 'may.' " This argument fails because, as we explain in Discussion, part B, *post*, the arbitration agreement obligates her and WCW to submit their respective claims against each other to binding arbitration.

Because the only indicium of procedural unconscionability presented by the arbitration agreement is its status as a contract

8

of adhesion, the trial court did not err in finding the agreement presents a low degree of procedural unconscionability. (See *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 ["It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability. . . . [¶] . . . When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconscionability of an adhesion agreement is low . . . .' "].)

## B.    The Arbitration Agreement Is Mutually Binding

The crux of this appeal is whether the trial court erred in concluding the arbitration agreement obligates Mirzoyan but not WCW to arbitrate claims. The court's conclusion in that regard hinged on its construction of paragraphs 1 and 2 of the agreement, which provide:

"1.    Employee is obligated to bring all workplace concern(s) or dispute(s) ('Issue') to the attention of Company management, in writing, for possible resolution. The writing should contain a brief description of the issue, the parties involved, and relevant date(s). Company response, if any, will be provided to the Employee within thirty (30) days of the date the issue is brought to Company's attention.

"2.    If after thirty (30) days the Employee is not satisfied with Company response, then the Issue, which includes but is not limited to, any and all claims or controversies arising out of Employee's application or candidacy for employment, employment, or cessation of employment with the Company, shall be resolved through final and binding arbitration pursuant to the National Rules for the Resolution of Employment Disputes of the

American Arbitration Association ('AAA') in existence as of the time the dispute arises. A copy of the Rules can be obtained from the AAA's website, adr.org/Dispute Resolution Services/Arbitration/Mediation/Employment Rules, or will be provided to you upon request. Arbitration may be initiated by either the Employee or the Company in accordance with the procedures specified in those Rules. The claims which are subject to arbitration shall include, but not be limited to, any and all employment-related claims or controversies, such as breach of employment agreement, breach of the covenant of good faith and fair dealing, negligent supervision or hiring, wrongful discharge in violation of public policy, unpaid wages of overtime under the state and federal wage payment laws, breach of privacy claims, intentional or negligent infliction of emotional distress claims, fraud, defamation, and divulgence of trade secrets."

At first blush, paragraph 1 and the first sentence of paragraph 2 suggest the arbitration contemplated by this agreement encompasses only claims raised by Mirzoyan after she had presented them to WCW. The remainder of paragraph 2 and other text in the arbitration agreement, however, demonstrate that the parties intended to be mutually bound to arbitrate any disputes between them relating to Mirzoyan's employment.[5] (See *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 799 [" '[E]ven if one provision of a contract is clear and explicit, it does not follow that that portion alone

_____

[5] As we explain in Discussion, part C.1, *post*, however, paragraphs 1 and 2 obligate only Mirzoyan to participate in the prearbitration dispute resolution mechanism before submitting her claims to arbitration.

must govern its interpretation; the whole of the contract must be taken together so as to give effect to every part.' "].)

First, the provision allowing "[a]rbitration [to] be initiated by either the Employee or the Company in accordance with the procedures specified in [the aforementioned AAA] Rules" supports this conclusion.[6]  AAA rule 4 indicates that in the absence of the parties' "joint request for arbitration," arbitration must be initiated by filing a "Demand" that raises a "claim" to which the other party may respond.[7]  If WCW's claims were not covered by the arbitration agreement, then, if WCW exercised its contractual right to initiate arbitration by presenting a claim against Mirzoyan, she could simply refuse to participate in the arbitration and insist that WCW file a court action.  (See *Holley v. Silverado Senior Living Management, Inc.* (2020)

---

[6] We use the shorthand "AAA rules" to refer to these procedures.

[7] In support of their motion to compel, appellants requested judicial notice of the AAA rules, a copy of which was attached to their request.  The trial court did not rule on this request for judicial notice, presumably because its denial of the underlying motion to compel mooted the request.  We take judicial notice of the AAA rules because Mirzoyan does not dispute their authenticity on appeal, there is no indication she did so below, and the AAA rules "are not subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (See Evid. Code, §§ 452, subd. (h), 459; *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1132, fn. 5 [sua sponte taking judicial notice of arbitration association rules]; *San Francisco CDC LLC v. Webcor Construction L.P.* (2021) 62 Cal.App.5th 266, 281, fn. 5 [taking judicial notice of a document in part because its authenticity had not been challenged].)

11

53 Cal.App.5th 197, 201 [" '[P]arties can only be compelled to arbitrate when they have agreed to do so. [Citation.] "Arbitration is a matter of consent, not coercion . . . ." ' "].) Thus, we cannot construe the arbitration agreement as encompassing only Mirzoyan's claims without running afoul of our obligation to " 'avoid [an] interpretation[ ] that render[s] any portion superfluous, void or inexplicable.' [Citation.]" (See *United Farmers Agents Assn., Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 495 (*United Farmers Agents Assn., Inc.*).)

Second, paragraph 2 provides a nonexhaustive list of "[t]he claims which are subject to arbitration . . . ." Several of the claims listed are those that an employee would likely assert, such as "wrongful discharge in violation of public policy" and "unpaid . . . overtime under the state and federal wage payment laws." Nevertheless, the list includes a claim that only an employer would be expected to raise—i.e., "divulgence of trade secrets." (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 171, 176 [identifying claims for " 'the use and/or unauthorized disclosure of trade secrets or confidential information' " as causes of action the employer "is most likely to bring against its employees"].) Accordingly, this aspect of the agreement further evinces the parties' intention to be bound to arbitrate Mirzoyan's *and* WCW's claims.

Third, paragraph 5 employs language suggesting the parties intended that the arbitration agreement be mutually binding. Paragraph 5 provides: "*The parties* to this Agreement intend to arbitrate *any disputes between them* on an individual basis only. To the fullest extent permitted by law, *the parties* agree that *they* shall not join or consolidate claims submitted for arbitration under this Agreement with those of any other

12

persons, and that no form of class, collective, or representative action shall be maintained without the mutual consent of the parties." (Italics added.)

Paragraph 5 would not have referred to "the parties[']" intent to arbitrate "any disputes between them" and barred either side from joining or consolidating "claims submitted for arbitration" if only Mirzoyan were obligated to submit her claims to final and binding arbitration. Moreover, the fact that the following paragraph states that "*Employee* will not be disciplined or retaliated against by the Company if *Employee* seeks to pursue claims on a class, collective, or representative basis" further supports the inference that the agreement is mutually binding, given that the two provisions differentiate between (1) the rights and obligations of "the parties" vis-à-vis joinder and (2) those of just "Employee"—i.e., Mirzoyan. (Italics added.) (Cf. *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1111–1112, 1134–1137 [rejecting the plaintiffs' argument that the term "Purchaser" in an agreement included a contracting party's subsidiaries in part because the agreement's definition of "Purchaser" did not include subsidiaries and, "[w]hen the parties intended to identify 'subsidiaries[ ]' [elsewhere in the agreement,] they knew how to do so"].)

Mirzoyan contends that "Paragraph No. 5 applies to class, collective and representative actions" and "[o]nly an employee would bring a class, collective or representative action, not an employer against the employee." Mirzoyan overlooks the text in paragraph 5 that bars not only class, collective, or representative actions, but *any* joinder or consolidation of claims submitted to arbitration, thus prohibiting WCW from joining claims against Mirzoyan with claims belonging to persons other than WCW.

13

Lastly, the arbitration agreement's recitals confirm our interpretation of the arbitration agreement as being mutual. One of the recitals states, "Employee and Company desire to resolve *any and all future disputes between them* in the most expeditious and economical fashion possible" and "Employee and Company recognize and agree that arbitration of *any and all disputes between them* through binding, impartial arbitration is in the best interests of both parties . . . ." (Italics added.) (See *Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 744 (*Burch*) [indicating that an agreement's recitals may provide evidence of the contracting parties' intent].)

In sum, when the arbitration agreement's terms are read as a whole, it is evident that each side agreed to submit its or her respective employment-related claims to final and binding arbitration. The trial court erred in holding that the arbitration agreement is substantively unconscionable because it lacks mutuality.

## C. Certain Provisions of the Arbitration Agreement Are Substantively Unconscionable

### 1. *The prearbitration dispute resolution mechanism is substantively unconscionable*

Paragraph 1 of the arbitration agreement requires the employee to "bring all workplace concern(s) or dispute(s) . . . to the attention of Company management" "for possible resolution" in a writing "contain[ing] a brief description of the issue, the parties involved, and relevant date(s)," and provides that the "Company['s] response, if any" will be provided to the employee within 30 days thereafter. The first sentence of paragraph 2 authorizes the employee to arbitrate the workplace concern or

14

dispute "[i]f after thirty (30) days the Employee is not satisfied with Company response . . . ." The arbitration agreement does not contain any language requiring WCW to discuss its claims with Mirzoyan before resorting to arbitration.

"While on [their] face, th[ese] provision[s] may present a laudable mechanism for resolving employment disputes informally," their "unilateral nature" "suggests that [WCW] would receive a 'free peek' at [Mirzoyan's] case, thereby obtaining an advantage if and when [she] were to later demand arbitration." (See *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1282–1283 (*Nyulassy*); see also *id.* at p. 1273 & fn. 4 [indicating that the arbitration clause in *Nyulassy* required the plaintiff-employee, but not the defendant-employer, to adhere to the prearbitration dispute resolution procedure].) Given the unfairly one-sided nature of the arbitration agreement's prearbitration dispute resolution mechanism, and appellants' failure to offer any justification for it after Mirzoyan raised the issue in her respondent's brief, we conclude this prearbitration dispute resolution mechanism is substantively unconscionable. (See *id.* at pp. 1283, 1287–1288 [concluding that an arbitration clause was substantively unconscionable in part because of its one-sided prearbitration dispute resolution mechanism]; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 78–79, 81, 89–90 [concluding that a "unilateral 'free peek' provision" was one of several "unconscionable provisions" in an arbitration agreement]; *Lange, supra,* 46 Cal.App.5th at p. 447 ["[S]ubstantive unconscionability 'pertains to the fairness of the agreement's actual terms.' [Citation.] . . . '"[U]nconscionability turns not only on a 'one-

15

sided' result, but also on an absence of 'justification' for it . . . ." ' "].)

> ### 2. *The attorney fees/costs provision is substantively unconscionable*

Paragraph 7 of the arbitration agreement provides in pertinent part: "The parties . . . shall be responsible for their own attorneys' fees and costs incurred in presenting their case to the Arbitrator." Mirzoyan argues that this provision is substantively unconscionable because it bars her from invoking her statutory right to seek attorney fees and costs if she prevails on her claims. We agree.

Before reaching Mirzoyan's challenge to this provision, we address a related issue. Mirzoyan points out that paragraph 18(c) of the *employment* agreement provides: "If either party employs attorneys to enforce any rights arising out of or relating to this agreement, the losing party shall reimburse the prevailing party for its reasonable attorneys' fees." The trial court rejected Mirzoyan's reliance on paragraph 18(c), reasoning that (a) she had "fail[ed] to show that either the Arbitration Agreement or the Employment Agreement contain provisions providing for any supplantation of the Arbitration Agreement's attorney fee provision" found in paragraph 7, and (b) "[t]he Arbitration Agreement . . . provides in paragraph 12 [that it] . . . supersede[s] all prior agreements or understandings between the parties concerning the subject matter of arbitration."[8]

---

[8] (See also Code Civ. Proc., § 1856, subd. (a) ["Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein

16

Mirzoyan does not contest the trial court's conclusion that paragraph 7 of the arbitration agreement supersedes paragraph 18(c) of the employment agreement. Accordingly, we proceed on the assumption that paragraph 7—and not paragraph 18(c)—governs the parties' rights vis-à-vis attorney fees and costs. (See *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 118 ["[T]he general rule [is] that trial court rulings are presumed correct."]; *In re D.N.* (2020) 56 Cal.App.5th 741, 767 [" '[I]t is as much the duty of the respondent to assist the [appellate] court upon the appeal as it is to properly present a case in the first instance, in the court below.' "].)

As previously noted, paragraph 7 requires both parties to bear their respective attorney fees and costs, regardless of whether Mirzoyan prevails. Conversely, FEHA provides that "the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees, except that . . . a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so." (See Gov. Code, § 12965, subd. (c)(6).)

Labor Code section 1102.5 authorizes "[t]he court . . . to award reasonable attorney's fees to a plaintiff who brings a successful action for a violation of" that statute. (See Lab. Code, § 1102.5, subd. (j).)

_____

may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement."].)

17

Paragraph 7's attorney fees and costs provision is thus substantively unconscionable because it abridges Mirzoyan's statutory rights to seek attorney fees and costs as a prevailing party. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 183 (*Serafin*) ["By requiring both parties to bear their own attorney fees and costs, the provision before us . . . runs counter to FEHA which allows a successful plaintiff to recover attorney fees and costs from the employer (but does not similarly allow an employer to recover fees and costs from an employee in most cases). [Citation.] Such a modification of California law is inappropriate . . . as it has the effect of denying a plaintiff the rights and remedies he or she would have if he or she were litigating his or her claims in court."].)

Appellants do not dispute the general proposition that a contractual provision requiring an employee to bear his or her own attorney fees and costs is substantively unconscionable. Instead, they assert that the following language from paragraph 8 empowers the arbitrator to order appellants to pay Mirzoyan's attorney fees and costs if she prevails: "The Arbitrator shall have the power to award all legal relief available in a court of law, including any and all damages that may be available for any of the claims asserted."

Appellants' resort to paragraph 8 fails. Although the American Rule "provides that each party to a lawsuit must ordinarily pay his or her own attorney fees," there are several exceptions to this rule, including when " 'fees are specifically provided for by statute . . . .' " (See *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1142 & fn. 2.) In addition, a prevailing party is typically entitled to costs as a matter of right. (See Code Civ. Proc., § 1032, subd. (b).) By its terms, the

fees/costs clause of paragraph 7 bars Mirzoyan from invoking exceptions to the American Rule and obtaining a cost award as a prevailing party via the Code of Civil Procedure and/or FEHA, given that the contractual provision requires each side to bear its own attorney fees and costs. If paragraph 8 were interpreted to allow Mirzoyan to nevertheless seek recovery of attorney fees and costs, then the fees/costs provision of paragraph 7 becomes nugatory. We cannot countenance such a construction of the contract. (See *United Farmers Agents Assn., Inc., supra*, 32 Cal.App.5th at p. 495.)

Appellants further maintain that AAA rule 39(d) safeguards Mirzoyan's right to seek attorney fees and costs if she prevails in the arbitration. As pertinent here, that rule provides: "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." It appears that appellants are claiming that rule 39(d) should be treated as a term of the arbitration agreement. Regardless of whether that premise is valid, it would not resuscitate the enforceability of the fees/costs provision of paragraph 7. To hold otherwise would, once again, prevent the attorney fees/costs provision from serving any purpose.[9]

---

[9] AAA rule 1 provides that "[i]f a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules." Appellants do not contend that AAA rule 1 invalidates the portion of paragraph 7 that precludes Mirzoyan from obtaining an award of attorney fees and costs.

19

For these reasons, we conclude that the portion of paragraph 7 requiring each side to bear its own attorney fees and costs is substantively unconscionable.

3. *The clauses providing that the arbitral award will be "final and binding" are not substantively unconscionable*

Mirzoyan claims the arbitration agreement's provisions requiring the parties to submit to final and binding arbitration operate as a waiver of her right to vacate an award on the ground that " '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' " Statutory and case law do not support this contention.

"[T]he 'final and binding' language of [an] arbitration agreement does not preclude judicial review of an arbitration award pursuant to Code of Civil Procedure sections 1286.2 and 1286.6." (See *Serafin, supra*, 235 Cal.App.4th at p. 184.) In turn, Code of Civil Procedure section 1286.2, subdivision (a)(4) authorizes the relief Mirzoyan claims is necessary to safeguard her rights, i.e., a court shall vacate an award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).)

Appellants claim the Federal Arbitration Act's judicial review provisions found in title 9 United States Code sections 9 and 10 govern any future petition to vacate an arbitral award. Much like Code of Civil Procedure section 1286.2, title 9 United States Code section 10 would allow the parties to seek vacation of an award on the ground that "the arbitrators exceeded their powers . . . ." (See 9 U.S.C. § 10(a)(4).) Whether this federal

20

procedure would apply to a petition to vacate filed in this matter is not altogether clear,[10] and is an issue we need not decide. Even if the federal judicial review procedures were applicable, the parties' obligation to submit to final and binding arbitration would not be substantively unconscionable because they could petition to vacate the award under title 9 United States Code section 10.

## D. The Prearbitration Dispute Resolution and Attorney Fees/Costs Provisions Are Severable from the Arbitration Agreement

Paragraph 11 of the arbitration agreement provides: "If, for any reason, any provision of this Agreement is determined by an arbitrator or a court of competent jurisdiction to be illegal or otherwise invalid, all other provisions of this agreement shall remain in full force and effect, insofar as they are consistent with existing law."

"Civil Code section 1670.5, subdivision (a) states that '[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' " (*Lange*, *supra*, 46 Cal.App.5th at p. 452.)

---

[10] Paragraph 9 of the arbitration agreement provides that the "Agreement is entered into under the Federal Arbitration Act, and shall be interpreted and construed in accordance with the law and procedures developed under that statute."

21

In determining whether to sever one or more unconscionable provisions from a contract, " '[c]ourts are to look to the various purposes of the contract[.]' . . . 'If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.' [Citation.]" (See *Lange*, *supra*, 46 Cal.App.5th at p. 454.)

" '[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although "[Civil Code section 1670.5] appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." ' [Citations.]" (See *Lange*, *supra*, 46 Cal.App.5th at p. 453.)

The trial court concluded that the entire arbitration agreement was unenforceable because its "lack of mutuality creates an 'unconscionable taint' that permeates the entire agreement . . . ." The court found that this taint could be purged only "through augmentation rather than merely severing or restrict[ing] the agreement: an action that the court is not authorized to perform." The trial court did not consider whether the arbitration agreement would have been enforceable if its only two substantively unconscionable aspects were the prearbitration dispute resolution mechanism and the attorney fees/costs provision addressed in Discussion, parts C.1 & C.2, *ante*.

22

We conclude, as a matter of law, that these two features of the arbitration agreement can be severed from the remainder of the agreement. (See *Lange*, *supra*, 46 Cal.App.5th at p. 453 [holding that although the trial court's decision whether to sever offending clauses from an arbitration agreement is reviewed for abuse of discretion, that discretion is constrained by " 'applicable legal principles' "].)

Although the prearbitration dispute resolution process is designed to "resolv[e] employment disputes informally" (see *Nyulassy*, *supra*, 120 Cal.App.4th at p. 1282), it is nonetheless collateral to the main purpose of the arbitration agreement. Assuming arguendo paragraphs 1 and 2 of the arbitration agreement would preclude Mirzoyan from initiating arbitration until she had presented her claims to WCW in accordance with the procedures delineated in those two paragraphs, the text of the arbitration agreement nonetheless indicates that compelling her participation in this prearbitration dispute resolution mechanism is not the central purpose of the contract. Specifically, the recitals indicate the principal objective of the agreement is to enable the parties "to resolve any and all future disputes between them in the most expeditious and economical fashion possible," that is, "through binding, impartial arbitration."[11] (See *Burch*, *supra*, 199 Cal.App.4th at p. 744

---

[11] In their appellate briefing, neither side addresses whether Mirzoyan participated in the arbitration agreement's prearbitration dispute resolution process before she filed suit. Additionally, appellants do not claim that any failure on Mirzoyan's part to comply with these prearbitration dispute resolution procedures would bar her from arbitrating her claims against them.

23

[indicating that an agreement's recitals may provide evidence of the contracting parties' intent].)

The portion of paragraph 7 that requires each side to bear its own attorney fees and costs is a collateral provision, given that "the main purpose of the arbitration agreement [is] not to regulate costs, but to provide a mechanism to resolve disputes." (See *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 92; see also *Serafin, supra*, 235 Cal.App.4th at pp. 183–184 [concluding that a provision requiring each party to bear its own attorney fees and costs was collateral to the main purpose of an arbitration agreement].)

We agree with appellants that " 'the illegal provision[s] can be extirpated from the contract by means of severance . . . .' [Citation.]"  (See *Lange, supra*, 46 Cal.App.5th at p. 454.)  As appellants demonstrate in their opening brief, the prearbitration dispute resolution mechanism can be readily excised from the contract by deleting the entirety of paragraph 1 and the first half of the introduction sentence of paragraph 2, such that the first operative provision of the arbitration agreement would begin with:  "[A]ny and all claims or controversies arising out of Employee's application or candidacy for employment, employment, or cessation of employment with the Company, shall be resolved through final and binding arbitration . . . ."[12]  The attorney fees and costs provision may be removed by simply

_____

[12] In offering these proposed deletions to the arbitration agreement, appellants were actually attempting to show that any lack of mutuality could be removed from the agreement. Nevertheless, the deletions they proposed have the effect of excising the prearbitration dispute resolution mechanism from the arbitration agreement.

24

deleting the underlined text from the second sentence of paragraph 7: "The parties may be represented by their own attorneys in the arbitration proceeding <u>and shall be responsible for their own attorneys' fees and costs incurred in presenting their case to the Arbitrator</u>." (Underscoring added.) No text needs to be added to the arbitration agreement to purge it of illegality.

Additionally, we observe that the presence of more than one unconscionable provision does not, per se, establish that severance is improper. (See *Lange, supra,* 46 Cal.App.5th at pp. 454–455.) Rather, " 'the dispositive question is whether "the central purpose of the contract" is so tainted with illegality that there is no lawful object of the contract to enforce.' [Citation.]" (*Id.* at p. 455.) As we have explained above, the answer to that dispositive question is "no."

## E. Appellants' Request for an Order Compelling Mirzoyan to Arbitrate Her Claims Against Saidiani and for a Stay Should Be Addressed by the Trial Court Upon Remand

Appellants ask us to "reverse the Trial Court's ruling and remand this case with instructions to enter a new order compelling [Mirzoyan] to arbitrate her claims against *all* Defendants and staying *all* Trial Court proceedings pending completion of arbitration." (Italics added.) Appellants argue that even though Alsa and Saidiani are not signatories to the arbitration agreement, those two defendants may compel Mirzoyan to arbitrate her claims against them.

We agree that Alsa may enforce the terms of the arbitration agreement against Mirzoyan. The arbitration agreement provides that it is "intended to apply to any claim

25

Employee may have against any of the Company's officers, directors, employees, agents, or any of its affiliated or related entities . . . ." In her complaint, Mirzoyan alleges that Alsa was a "Scheduler" at WCW when she "verbally harass[ed Mirzoyan] daily based on [Mirzoyan's] race . . . ." The pleading indicates the job title "Scheduler" refers to a position of employment at WCW. Therefore, Alsa is a third-party beneficiary of the arbitration agreement.[13]

Although appellants asked the trial court for an order compelling Mirzoyan to arbitrate her claims against *all* named defendants, the court did not address whether Mirzoyan's claims against Saidiani are subject to arbitration because it denied the entirety of the motion to compel. For that same reason, the trial court had no occasion to address appellants' request to stay the action pending arbitration.

---

[13] (See *Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 967 [holding that " ' "[t]he test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract[,]" ' " and that a third-party beneficiary "may enforce the contract"]; *Michaelis v. Schori* (1993) 20 Cal.App.4th 133, 135, 139 [holding that a nonsignatory employee or associate could invoke an arbitration agreement against a plaintiff who was a party thereto because the contract provided that all claims against the employees and associates of the defendant-signatory must be arbitrated]; *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 477, 478–479 [holding that a doctor-employee of a professional corporation was a third-party beneficiary of an arbitration agreement that covered claims against the professional corporation and its " 'employees or other contracting health professionals' "].)

Because appellants do not explain why—despite Saidiani's failure to join their motion to compel—Mirzoyan should be ordered to arbitrate her claims against Saidiani, we decline to reach this issue.  (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [" 'We are not bound to develop appellants' arguments for them.' "].)  We leave that matter for the trial court to decide in the first instance upon remand.  Because the resolution of that issue affects whether a stay of all or only part of the trial court proceedings may be appropriate, appellants' request for a stay is not ripe for our review.  (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 [" 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' "].)  On remand, the trial court may address the propriety of appellants' request for a stay in the first instance as well.

## DISPOSITION

We reverse the trial court's order denying the motion to compel arbitration. Upon remand, the trial court shall: (a) determine in the first instance whether to compel Ani Mirzoyan to arbitrate her claims against Anthony Saidiani, and (b) undertake further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

28