Filed 2/24/23 Rodriguez v. Club CA2/3

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| YESSICA SHARLENE RODRIGUEZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JONATHAN CLUB et al., <br><br> Defendants and Appellants. | B317622 <br><br> Los Angeles County Super. Ct. No. 21STCV25955 |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge. Affirmed.

Parker, Milliken, Clark, O'Hara & Samuelian, Edzyl G. Magante, David S. McLeod, Kristina L. Hohne, Karl A. Schmidt, and Joseph P. Wohrle for Defendants and Appellants.

Valiant Law, Kamran Shahbi, and Aaron Bustos for Plaintiff and Respondent.

# INTRODUCTION

Plaintiff Yessica Sharlene Rodriguez (plaintiff) sued her former employer Jonathan Club (Club) and its human resources director (Hiromi Oki) asserting a variety of employment-related claims. Club and Oki petitioned to compel arbitration of her claims, citing an arbitration provision found in the employee handbook and an acknowledgment plaintiff signed at the outset of her employment indicating that she agreed to be bound by the arbitration provision. The trial court denied the petition, finding that the arbitration agreement was unconscionable and therefore unenforceable. We agree with the court's conclusion and therefore affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Employment

Club hired plaintiff as Assistant Director of Human Resources on June 12, 2019. At the beginning of her employment, Club provided plaintiff with an employee handbook. The handbook was at least 47 pages in length and included a section called "Employee Conduct." That section laid out a four-step employee complaint resolution system:

"Complaint Resolution Procedure [¶] Jonathan Club recognizes that employees may have questions or problems regarding their work, working conditions, policies, procedures, or other work-related issues. In order to actively encourage employees to express their concerns and to seek resolution of their questions, the Club has established a problem resolution procedure for all employees. Jonathan Club is eager to have employee problems resolved as quickly as possible and in a considerate manner, free from any reprisals or recrimination for

2

using the procedure. The Club retains the right to modify the following procedure in any way and under such circumstances as it deems appropriate in its sole discretion. If you have a complaint, you should take the following steps, as appropriate:

"Step One [¶] If the issue cannot be resolved informally, present the complaint to your immediate supervisor. If you do not feel comfortable raising the issue with your supervisor you may proceed to step two or three as appropriate. In cases of sexual harassment in particular, you may proceed directly to step three.

"Step Two [¶] If the issue cannot be, or is not resolved through discussion with your supervisor, or if the nature of the situation is such that you do not wish to discuss it with your supervisor, you are encouraged to request a meeting with your department head. In an effort to resolve the problem, the department head will consider the facts and make appropriate inquiries, and may review the matter with the Human Resources Department.

"Step Three [¶] If, after receiving your department head's decision, you are still not satisfied, you must present your complaint to your Division Head before going to the Human Resources Director, who will fully consider all relevant facts and circumstances and issue a recommendation to the General Manager whose decision is final and binding. [¶] Jonathan Club does not tolerate any form of retaliation against employees availing themselves of this procedure.

"Step Four[1] [¶] If the issue is still not resolved to your satisfaction by the Human Resources Department, Jonathan Club and you shall resolve, to the fullest extent permitted by law,

---

[1] We will refer to Step Four as the arbitration provision.

any and all claims or controversies between us (or between you and any present or former officer, director, agent, or employee of Jonathan Club) relating in any manner to your employment or the termination of your employment shall be resolved [*sic*] by final and binding arbitration pursuant to the FAA, except to the extent that you elect to pursue such claim exclusively in the Small Claims Division of the Los Angeles Superior Court and limit your claim to its then jurisdictional amount, currently $10,000. Except as specifically provided herein, any arbitration proceeding shall be conducted in accordance with California Code of Civil Procedure §1280, et seq.

"Claims subject to arbitration shall include contract claims, tort claims, and common law claims, as well as claims based on any federal, state, or local law, statute or regulation (including but not limited to any claims arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the California Fair Employment and Housing Act. Claims arising under the Employee Retirement Income Security Act ("ERISA"), or administrative claims of any kind demanding administrative remedies or benefits filed with any federal or state governmental agency including the National Labor Relations Board ("NLRB"), the Equal Opportunities Commission ("EEOC"), Department of Labor (DOL), Department of Labor Standards Enforcement ("DSLE"), Fair Employment and Housing Administration ("FEHA"), federal or state Occupational Health and Safety Administration ("OSHA"), the Workers' Compensation Appeals Board, the Employment Development Department or other regulatory agencies are not covered by this Agreement. However, any right to litigate a Claim arising from the determination of

any Administrative Agency is subject to mediation and arbitration under the terms of this Agreement. In addition, requests for temporary restraining orders and/or preliminary injunctions in the California Superior Court by either Jonathan Club or you, where such temporary equitable relief would otherwise be authorized by law, are allowed pursuant to CCP Sec. 1281.8. However, any trial on the merits of the underlying action relating to any such temporary restraining order or preliminary injunction shall occur in front of and will be decided by an Arbitrator as set forth in this Policy. Either you or Jonathan Club may also bring an action in any court of competent jurisdiction to compel arbitration of a matter covered by this Policy and to enforce an arbitration award. Labor Code Sec. 229 subjects are excluded from this Policy, unless the enforcement of that statute is prohibited by federal or state law.

"Under this Policy you agree that all claims you may make shall be adjudicated under the terms of this Agreement, and you specifically waive your right to act as a representative for any class or participate as a member in any class or collective action filed in connection with claims covered by this Agreement, irrespective of whether the class action is filed in state or federal court. Any arbitrator selected to arbitrate claims under the terms of this Agreement has no authority to consolidate or join claims of other employees or preside over any form of class action.

"Arbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding written reasoned decision. The arbitrator makes this decision after both sides present their evidence and arguments at the arbitration hearing. There is no jury and there is only a limited form of judicial review. If you win, you can be awarded anything

you might seek through a court of law. The neutral party runs the proceeding, which is held privately.

"Though arbitration is much less formal than a court trial, it is an orderly proceeding, governed by rules of procedure and legal standards of conduct.

"The aggrieved party must give written notice of any claim subject to arbitration under this Policy to the other no later than the expiration of the statute of limitations that the laws of the State of California prescribe for such claim.

"The parties shall mutually select a neutral arbitrator who has at least ten (10) years of experience with respect to deciding disputes between employers and employees under California law. In the event the parties are unable to mutually agree upon an arbitrator, the parties shall select an arbitrator as provided for by the AAA rules governing employment disputes, or some comparable service providing neutral arbitrators, such as ADR Services, Inc. or ARC. The arbitration shall be conducted consistent with the rules of the American Arbitration Association ("AAA"), as set forth in the AAA National Rules For The Resolution of Employment Disputes, or its successors rules, as in effect on the date of the claim, to the extent they are not inconsistent with any provision of this Agreement, in which event the provisions of this Agreement shall govern. (A current copy of these rules is available on the AAA website at Employment Arbitration Rules & Mediation Procedures or from the Human Resources department.) The parties shall be entitled to discovery as provided by the aforesaid AAA rules. At least thirty (30) days before the arbitration hearing, the parties will exchange lists of witnesses, including any experts, and copies of all exhibits intended to be used at the arbitration. Either party may request

such remedies and damages that are allowed by California law. The parties shall be entitled to submit briefs to the arbitrator within 30 days of the close of the hearing. The Arbitrator shall issue a written arbitration decision that explains the reasons for the award, including the essential findings and conclusions on which the award is based so as to ensure meaningful judicial review of the decision. The Los Angeles Superior Court shall have jurisdiction to review the final award for errors of law and shall have the power to review any award of punitive damages to the same extent as such damages are reviewable on appeal from a court judgment.

"The procedural law of the FAA shall govern the enforcement and application of this Agreement. The substantive laws of the State of California shall be used by the arbitrator to determine the respective rights and obligations of the parties and in ruling on procedural and substantive issues raised in the arbitration itself. Jonathan Club shall pay the reasonable fees of the arbitrator and the expenses associated with the arbitration, to the extent that such fees and expenses exceed the amount you would have incurred had you initiated the claim(s) in the state or federal court having jurisdiction over the claim(s). You will pay to the arbitration service the filing fees you would have paid had you initiated the claims(s) in state or federal court. Each party will pay their own attorney's fees and expenses associated with the arbitration unless a party prevails on a statutory claim and the statute provides that the prevailing party is entitled to payment of his or her attorneys' fees. In that case, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party as provided by law. Except as otherwise provided herein, neither party shall initiate or prosecute any lawsuit in any way

related to any arbitrable claim, including without limitation any claim as to the making, existence, validity, or enforceability of the agreement to arbitrate. All arbitration hearings shall be conducted in Los Angeles, California. Nothing herein precludes you from filing an administrative charge before any agency that has jurisdiction over an arbitrable claim.

"You are not required to hire a lawyer to participate in arbitration and no party may use a non-party lawyer in a Small Claims Court action. While the Club has access to legal advice through its outside lawyers, the Club will participate in arbitration without a lawyer, if you choose not to use a lawyer in the arbitration and notify the Club in advance of your decision.

"The Club remains of the view that only in extreme matters will arbitration or a Small Claims Court action be necessary. However, if you decide to commence a Small Claims Court Action, the Human Resources Department will provide you with either a Small Claims Court Complaint form or a Demand for Arbitration form."

As a condition of her employment, plaintiff was required to sign an acknowledgment in which she confirmed that she had received a copy of Club's employee handbook. As pertinent here, the acknowledgment included the following provisions:

"I acknowledge that I have received a copy of Jonathan Club's Employee Handbook. I understand that I am responsible for knowing and adhering to the policies set forth in the Handbook during my employment with Jonathan Club.

"The policies contained in the Handbook are not intended to create any contractual rights or obligations, and Jonathan Club reserves the right to amend, interpret, modify, or withdraw any portion of this Handbook at any time.

"I understand and agree that my relationship with Jonathan Club is at will, which means that my employment is for no definite period and may be terminated by me or by Jonathan Club at any time and for any reason with or without cause or advance notice. I also understand that Jonathan Club may demote, discipline, transfer, or reassign me or alter the terms of my employment at any time at its discretion, with or without cause or advance notice.

"I understand that the Club has established a system of binding arbitration for the resolution of problems that is described in the handbook under the Dispute Resolution section. I further understand that, as a condition of employment and continued employment, I agree to submit any complaints or disputes to the problem resolution and arbitration process therein described. If not earlier resolved, I agree to abide by and accept the final decision of the arbitrator with respect to any and all events that relate[ ] to or arise out of my employment or the termination of my employment. I further understand that arbitration represents an alternative to a jury trial and that this constitutes a waiver of my right to a jury trial."

Club apparently terminated plaintiff's employment on or about February 3, 2020.

## 2.    Complaint

In July 2021, plaintiff obtained a right to sue letter from the Department of Fair Employment and Housing. She subsequently filed a complaint against Club and Club's Director of Human Resources Hiromi[2] Oki. The complaint asserts a broad

---

[2] The complaint erroneously names "Horimi" Oki.

range of causes of action: disability discrimination (Gov. Code, § 12900 et seq. (FEHA)), failure to engage in the interactive process (FEHA), failure to provide reasonable accommodation (FEHA), disparate treatment (FEHA), retaliation (FEHA), retaliation (Lab. Code, § 1102.5), failure to prevent discrimination, harassment and retaliation (FEHA), wrongful termination in violation of public policy, intentional infliction of emotional distress, negligent infliction of emotional distress, waiting time penalties (Lab. Code, § 201 et seq.), and negligent retention and supervision. Plaintiff sought damages in excess of $2 million and, inter alia, restitution, civil penalties, punitive damages, litigation costs, and attorney's fees.

## 3. Petition to Compel Arbitration

### 3.1. Petition

In response to plaintiff's complaint, Club[3] petitioned to compel arbitration. Club asserted that plaintiff had received a copy of its employee handbook, the handbook contained an arbitration provision, and plaintiff signed an acknowledgment stating she had received the employee handbook. The signed acknowledgment specifically referenced, in underlined text, the arbitration provision in the employee handbook and stated that by signing the acknowledgment, the employee was agreeing to be bound by the arbitration provision and the arbitration result. Plaintiff also continued her employment after receiving the handbook and signing the acknowledgment. Accordingly, Club argued, plaintiff had agreed to arbitrate the claims set forth in

[3] Oki was represented by Club's counsel and moved jointly with Club to compel arbitration.

her complaint. Plaintiff, however, had refused Club's request to arbitrate her claims.

Club asserted that the Federal Arbitration Act (FAA) applied to the dispute because Club provided services related to interstate commerce. Further, Club argued that the arbitration provision and the acknowledgment were valid under the FAA and required plaintiff to submit her claims to arbitration. Citing Code of Civil Procedure section 1281.2, Club asked the court to submit the controversy to arbitration and stay all court proceedings.

### 3.2. Opposition

Plaintiff opposed the petition on a variety of grounds. First, plaintiff argued that the signed acknowledgment contained a provision stating that the handbook did not create any contractual rights or obligations and therefore no contractual agreement to arbitrate existed. Second, she asserted no agreement to arbitrate existed because the arbitration provision was not conspicuous, was hidden in a section titled "Employee Conduct," and she had no notice that the employee handbook contained an arbitration provision. Third, plaintiff claimed that because the Club reserved the right to change its policies at any time, any agreement to arbitrate was illusory and therefore unenforceable. Fourth, plaintiff contended she had no notice that she had waived her right to a jury trial and, in the absence of informed consent, no agreement to arbitrate was created. Fifth, and finally, plaintiff urged that the arbitration provision was unenforceable because it was unconscionable. Procedurally, the provision was unconscionable because it was a contract of adhesion and was the result of surprise, due to the confusing language of the acknowledgment and the failure to call the arbitration provision to the reader's attention in the employee

11

handbook. Further, plaintiff claimed, the arbitration provision was substantively unconscionable because it limited plaintiff's available remedies and required plaintiff to utilize a one-sided internal dispute resolution procedure.

### 3.3. Reply

In reply, Club defended the validity of the arbitration provision mainly by refuting plaintiff's claims of unconscionability.

### 4. Ruling and Appeal

The court heard argument on the petition to compel arbitration on December 9, 2021. The court adopted its tentative ruling as its final ruling by minute order of the same date.

As an initial matter, the court found that a valid agreement to arbitrate (i.e., the handbook's arbitration provision and the signed acknowledgment agreeing to be bound by that provision) existed and that the FAA applied to that agreement. The court also found that the agreement was valid under California law relating to agreements to arbitrate claims brought under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA).[4] The court concluded, however, that the arbitration agreement was unconscionable and therefore unenforceable.

As to procedural unconscionability, the court noted that the arbitration agreement was a contract of adhesion and that

---

[4] Our Supreme Court has held that any agreement to arbitrate FEHA claims must not limit statutory damages, must allow for discovery, must be in writing and allow for judicial review, and must provide that the employer pays the costs of arbitration. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 101–113 (*Armendariz*).)

plaintiff was required to agree to it as a condition of employment. In addition, the court agreed with plaintiff's contention that the arbitration agreement resulted from surprise because the acknowledgment referencing the arbitration provision directed plaintiff to a nonexistent section of the employee handbook titled "dispute resolution," whereas the arbitration provision was actually found in a section titled "employee conduct." Accordingly, the court found a high degree of procedural unconscionability existed.

The court also found that substantive unconscionability was present. Specifically, the court found that the arbitration agreement was one-sided because "[t]he Agreement only seems to address claims that Plaintiff might bring and does not address any claims that [Club] may have arising out of the employment relationship." In addition, citing *Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267 (*Nyulassy*), the court noted that under Club's employer-controlled complaint resolution procedure, an employee was required to present any complaint to a supervisor or department head before pursuing arbitration. That procedure, the court noted, would give Club a "free peek" at an employee's case and result in an unfair advantage to Club at any arbitration.

In light of its unconscionability findings, the court denied Club's petition to compel arbitration. This timely appeal followed.

## DISCUSSION

Club contends the court erred in finding that the arbitration agreement is unconscionable. We disagree.

13

### 1. Standard of Review

The applicable standard of review is well established. " ' "[W]e review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law." ' [Citation.] Thus, unconscionability is a question of law we review de novo. [Citation.] To the extent the trial court's determination on the issue turned on the resolution of contested facts, we … review the court's factual determinations for substantial evidence. [Citation.]" (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 82; accord, *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*) [noting generally applicable contract defenses, such as unconscionability, may be applied to invalidate arbitration agreements without running afoul of the FAA or California law]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 65–66 (*Swain*).) In keeping with the strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686; and see *Armendariz*, *supra*, 24 Cal.4th at pp. 83, 97–98, abrogated in part by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 340 [noting strong public policy in favor of arbitration under both federal and California law].)

### 2. The Arbitration Agreement Is Unconscionable

Club challenges both the procedural and substantive unconscionability findings by the court. We address these issues in turn.

14

### 2.1. General Legal Principles

"The general principles of unconscionability are well established. … [T]he unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' [Citation.] [¶] Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required [citations] … 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*OTO*, *supra*, 8 Cal.5th at pp. 125–126; *Swain*, *supra*, 57 Cal.App.5th at p. 67; see also Civ. Code, § 1670.5, subd. (a) ["If the court as a matter of law finds [a] contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."].)

15

### 2.2.    Procedural Unconscionability

Our Supreme Court has often explained that "[a] procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' (*Armendariz, supra,* 24 Cal.4th at p. 113.) An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245 (*Baltazar*); see *Armendariz*, at p. 113.) Arbitration contracts imposed as a condition of employment are typically adhesive (see *Armendariz*, at pp. 114–115; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704[.])" (*OTO, supra*, 8 Cal.5th at p. 126.) The agreement here is no exception and Club does not contend otherwise. Both the employee handbook and the acknowledgment were preprinted and prepared by Club. And plaintiff was told she was required to sign the acknowledgment form as a condition of her employment—a classic "take it or leave it" situation.

Given that the agreement to arbitrate is adhesive, we must consider "whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.]" (*OTO, supra*, 8 Cal.5th at p. 126.) Oppression means that a contract " ' "lack[s] … negotiation and meaningful choice" ' " whereas surprise occurs when the arbitration " ' "is hidden within a prolix printed form." ' " (*Pinnacle, supra*, 55 Cal.4th at p. 247; *OTO,* at p. 126.)

The court found that the agreement to arbitrate resulted from surprise mainly because the acknowledgment states that the employee agrees to be bound by the "system of binding arbitration for the resolution of problems that is described in the

handbook under the Dispute Resolution section." As the court noted, the handbook does not contain a section titled "dispute resolution," and the arbitration provision is instead found in a section titled "employee conduct" under the heading "complaint resolution procedure." The arbitration provision is found on pages 28 to 30 of a handbook that is at least 47 pages in length.

Although the acknowledgment is not a model of clarity, it does highlight, in underlined text, the critical aspects of arbitration: it is binding, and it delegates the resolution of complaints to an arbitrator rather than a jury. Specifically, the following text, which was included in the single-page acknowledgment and was underlined, explains the agreement the employee was making by signing the acknowledgment: "I further understand that, as a condition of employment and continued employment, I agree to submit any complaints or disputes to the problem resolution and arbitration process therein described. If not earlier resolved, I agree to abide by and accept the final decision of the arbitrator with respect to any and all events that relate[ ] to or arise out of my employment or the termination of my employment. I further understand that arbitration represents an alternative to a jury trial and that this constitutes a waiver of my right to a jury trial." In sum, the acknowledgment standing alone advised plaintiff that by signing it, she agreed to arbitrate all employment-related claims.

Plaintiff relies on *Bruni v. Didion* (2008) 160 Cal.App.4th 1272 (*Bruni*), to support the court's finding that a "high degree of procedural unconscionability" exists due to surprise. *Bruni* is one of numerous cases holding that a visually undistinguished arbitration provision buried in a mountain of paperwork may support a finding of surprise. (*Id*. at p. 1293; Knight, et al., Cal.

Practice Guide: Alternative Dispute Resolution (The Rutter Group 2022) ¶ 5:150.5c.) But *Bruni* is distinguishable with respect to the scale of the surprise. There, homebuyers signed a voluminous set of documents in connection with a home purchase. (*Bruni* at p. 1282.) They were told not to review the documents at the time of signing and were not given time to do so. (*Ibid*.) The arbitration provision at issue was contained on one page of a 30-page booklet in which the text was single-spaced and in 10-point type. The provision was not visually distinguished (such as by the use of boldface or italics) and the booklet itself was buried within a voluminous stack of documents relating to the home purchase. And the homebuyers were not even asked to acknowledge receipt of the booklet. (*Id*. at p. 1293.) The only document the homebuyers signed—an application—did state that the booklet contained an arbitration provision, but it did not disclose the scope or effect of the provision. (*Ibid*.)

Here, by contrast, plaintiff was given the employee handbook and asked to acknowledge the receipt of the book and to agree to binding arbitration. The acknowledgment was only one page, and the arbitration-related text was visually distinguished with underlining. The acknowledgment also disclosed the material consequences of binding arbitration. Further, and unlike *Bruni*, there is no indication that either the handbook or the acknowledgment was buried in a stack of other documents or that plaintiff was told not to read the handbook.

In sum, we agree with the court's conclusion that procedural unconscionability is present, but it is not the "high degree of procedural unconscionability" found to exist by the trial court. But " 'a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts

will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.' [Citation.]" (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915.) We continue our analysis on that point.

### 2.3.  Substantive Unconscionability

Substantive unconscionability examines the fairness of a contract's terms. This analysis " 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1532), " 'unduly oppressive' " (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 925), " 'so one-sided as to "shock the conscience" ' (*Pinnacle*[*, supra,*] 55 Cal.4th [at p.] 246), or "unfairly one-sided" (*Little* [*v. Auto Stiegler, Inc.* (2003)] 29 Cal.4th [1064,] 1071). All of these formulations point to the central idea that the unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' [citation], but with terms that are "unreasonably favorable to the more powerful party." ' (*Sonic*[-*Calabasas A, Inc. v. Moreno* (2013)] 57 Cal.4th 1109[, 1145].) Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties. (*Ibid.*) They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations. (*Ibid.*; see *Sanchez, supra*, 61 Cal.4th at p. 911.)" (*OTO, supra*, 8 Cal.5th at pp. 129–130.)

The court found that the arbitration agreement was substantively unconscionable for two reasons. First, the court

concluded that the arbitration agreement "only seems to address claims that Plaintiff might bring and does not address any claims that [Club] may have arising out of the employment relationship." We agree. As our high court recognized in *Armendariz*, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (*Armendariz, supra*, 24 Cal.4th at p. 120.)

The court relied on *Nyulassy*, *supra*, 120 Cal.App.4th 1267 a case in which a predispute arbitration clause contained in the employment agreement provided, " 'If I object to or disagree with any Lockheed Martin personnel decision relating to or affecting the terms and conditions of my Lockheed Martin employment ..., I agree I shall seek to resolve my objection or disagreement through discussions within successive levels of my supervisory chain of command, until the objection or disagreement is resolved or I have had the opportunity to discuss the matter with the Vice President, Human Resources, or such other senior management official responsible for human resources matters within the Lockheed Martin business unit to which I am assigned. I understand and agree that if the dispute or controversy is not resolved to my satisfaction by means of such discussion(s), my sole and exclusive remedy and avenue of redress is through arbitration proceedings conducted in accordance with the employment dispute resolution rules of the American Arbitration Association. ... I understand that by agreeing to arbitration of any and all such disputes and controversies ... I hereby knowingly, willingly and advisedly *waive* any and all rights to pursue

20

judicial proceedings or actions and remedies which I might otherwise have been entitled to pursue, or which might otherwise have been available to me, in the absence of the waiver established by this sentence. ...' " (*Id*. at p. 1273, fn. 4, capitalization omitted.) The agreement also required the employee to file a demand within 180 days of the employer's termination decision and provided the failure to satisfy the limitations period resulted in a waiver of the employee's claims. (*Ibid*.)

The Court of Appeal determined the agreement was unilateral and contained other substantively unconscionable elements. (*Nyulassy, supra*, 120 Cal.App.4th at pp. 1282–1283.) Specifically, the arbitration provision in *Nyulassy* was triggered only by the employee's "objection or disagreement" with a personnel decision relating to or affecting his or her employment. By its terms, it applied only to the employee's claims and not to the employer's.

Here, like *Nyulassy*, the context and language of the arbitration provision indicate that it only applies to complaints by the employee against Club. The arbitration provision is found, for example, in the section of the employee handbook titled "*employee* conduct." And the introductory paragraph of the subsection titled "complaint resolution procedure," for example, provides context for the four-step process that follows. That paragraph states that "*employees* may have questions or problems regarding their work, working conditions, policies, procedures, or other work-related issues" and indicates that the complaint resolution procedure is designed "to actively encourage *employees* to express their concerns and to seek resolution of their questions." It also states that Club "is eager to have *employee*

21

*problems* resolved as quickly as possible and in a considerate manner, free from any reprisals or recrimination for using the procedure," again indicating that the process relates to concerns expressed by employees, rather than Club. The closing sentence affirms the application of the process: "If *you* [i.e., the employee] have a complaint, *you* should take the following steps, as appropriate … ." (Italics added.) In sum, like the agreement in *Nyulassy*, the first paragraph of the arbitration provision makes plain that the conflict resolution procedure expressly relates to complaints *by employees* and it is therefore substantively unconscionable. (*Armendariz, supra*, 24 Cal.4th at p. 119 [holding arbitration provision that requires only the weaker party to arbitrate is substantively unconscionable].)

Club points to some general language contained in the arbitration provision to the effect that the provision relates to "any and all claims or controversies" between the employee and Club. Of course, context is important. The arbitration provision states at the outset: "Step Four [¶] If the issue is still not resolved to your satisfaction by the Human Resources Department, Jonathan Club and you shall resolve, to the fullest extent permitted by law, any and all claims or controversies between us (or between you and any present or former officer, director, agent, or employee of Jonathan Club) relating in any manner to your employment or the termination of your employment shall be resolved [*sic*] by final and binding arbitration pursuant to the FAA, except to the extent that you elect to pursue such claim exclusively in the Small Claims Division of the Los Angeles Superior Court and limit your claim to its then jurisdictional amount, currently $10,000." In other words, by its terms the arbitration provision applies to an employee complaint that has

22

already moved through the first three steps of the conflict resolution process and has not been resolved to the employee's satisfaction. The last portion of the sentence also plainly applies only to employee complaints, as it states "except to the extent that *you* [i.e., the employee] elect to pursue such claim … ." (Italics added.)

Club also cites language authorizing both the employee and Club to seek a restraining order or preliminary injunction as evidence that the arbitration provision is meant to apply to its claims against an employee as well as an employee's claims against it. But the cited language immediately follows a lengthy list of the sorts of claims covered by the arbitration provision. As Club notes, this list is prefaced by broad language indicating it is for purposes of example. Nevertheless, each claim listed would only be brought by an employee against an employer, e.g., claims under state and federal law relating to discrimination on the basis of age or disability.

We see additional unconscionability in the judicial review provision which benefits Club but not the employee. The arbitration provision provides for limited review of the arbitrator's decision, as is the norm, but allows for a full judicial review of an award of punitive damages—something that would almost certainly benefit only Club. This provision contributes to the arbitration provision's one-sidedness.

Club cites two cases in support of its contention that the arbitration provision is bilateral and therefore not substantively unconscionable, *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 and *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232. These cases are not on point, as they relate to arbitration provisions that used the language "I agree"

throughout the text and the Court of Appeals' determinations that such language did not necessarily render an arbitration provision unilateral. (*Roman*, at p. 1473 [rejecting argument that the language "I agree" in an arbitration agreement, standing alone, rendered the agreement unilateral]; *Nguyen*, at p. 252 [declining to find that " 'the mere inclusion of the words "I agree" by one party in an otherwise mutual arbitration provision destroys the bilateral nature of the agreement' "].) We do not ground our analysis in such language here, however.

The trial court found the arbitration provision unconscionable for a second reason. Specifically, the court noted that under the conflict resolution procedure, Club's "employees must present their claims to a supervisor or department head before they may present their claim for arbitration." The court determined that " '[g]iven the unilateral nature of the arbitration agreement, requiring plaintiff to submit to an employer-controlled dispute mechanism, (i.e., one without a neutral mediator) suggests that defendant would receive a "free peek" at plaintiff's case, thereby obtaining an advantage if and when plaintiff were to later demand arbitration.' " (See *Nyulassy, supra*, 120 Cal.App.4th at pp. 1282–1283.)

On the record before us, the court's reasoning is inapplicable. Plaintiff did not use the conflict resolution procedure before filing her complaint in this action and Club has not demanded that she do so now. Club has received no advantage here and therefore we need not consider whether, in the abstract, Club's policy is substantively unconscionable on that basis as well.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Plaintiff shall recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


NGUYEN, J.*


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.